[Civil No. 3511. Filed April 8, 1935.]

[43 Pac. (2d) 200.]

O'MALLEY LUMBER COMPANY, a Corporation, Appellant, v. JEROME P. MARTIN and ALICE J. MARTIN, His Wife, HARRY R. TALMAGE, Trustee in Bankruptcy of Jerome P. Martin, Bankrupt, SUNSHINE CITY INVESTMENT COMPANY, a Corporation, and PHIL J. MARTIN, Jr., Appellees.

Messrs. Conner & Jones, for Appellant.

Mr. George O. Hilzinger, Mr. Arnold T. Smith and Mr. James E. Dunseath, for Appellees.

LOCKWOOD, C. J.—This is an appeal from an order of the superior court of Pima county dissolving certain writs of attachment and garnishment in a case wherein O'Malley Lumber Company, a corporation, hereinafter called plaintiff, attached certain property belonging to Jerome P. Martin and Alice J. Martin, his wife, hereinafter called defendants, and also secured the issuance of a writ of garnishment against Sunshine City Investment Company. There were several other parties defendant, but the questions raised on this appeal are such that it is unnecessary to discuss their participation in the action.

The questions involved are of law only, the undisputed facts being as follows: In 1929 defendants entered into a contract with the Murphy Building Company, hereinafter called the Company, by which the latter agreed to erect and furnish a certain apartment building on defendants' property for $101,100. The defendants paid the Company no cash, but gave their note to Southern Arizona Bank & Trust Company for $60,000 secured by a first mortgage on the property, and their note for $41,100 to the Company secured by a second mortgage thereon, and later an

unsecured note to the Company for certain extras, thus making payment in full under the contract. The Company thereafter transferred the second note and mortgage to plaintiff, which in 1931 filed suit against the defendants thereon, and also sued out an attachment under sections 4241 and 4242, Revised Code 1928, averring as grounds therefor that the debt had not been fully secured. Immediately after the writ was issued, an affidavit for garnishment against the Sunshine City Investment Company was filed under section 4258, Revised Code 1928, alleging as cause therefor that an original attachment had theretofore been issued. Thereafter defendants moved to dissolve the writs and undertook to traverse the affidavit made in support of the writ of attachment, alleging that the debt sued on was fully secured. Plaintiff moved to strike the traverse on the ground that the matters contained in an affidavit of attachment made under section 4242, *supra*, are not traversable. This last motion was by the court denied and the traverse was heard on its merits, resulting in certain findings made by the trial court, and an order dissolving the writs of attachments and garnishment.

There are two questions of law presented by the assignments of error, the first being whether the affidavit of attachment was traversable, and the second whether, if it is so traversable, the court erred in refusing to consider evidence of the actual cost of the improvements, above referred to, and the value of the property which secured the mortgage in question, for the purpose of determining whether or not the debt involved in the action was "fully secured" within the meaning of the statute.

We consider first whether or not the affidavit of attachment was subject to traverse. It is the contention of plaintiff that our attachment statute, on

which the affidavit was based, was taken from Texas; that the courts of that state have held consistently and repeatedly that affidavits of this kind are not subject to traverse, the owner of the attached property being relegated to his remedy on the attachment bond, and further, that our statute, taken as a whole, shows affirmatively that it was not the intention of our legislature to allow a traverse of an affidavit of this nature. It is the position of the defendants that the particular portion of the attachment statute in question was not taken from Texas but from California; that under the decisions in that state on a similar statute it is held that the affidavit is subject to traverse; that such is the majority rule in the various states having a similar statute, and, further, that our statute contemplates a traverse of any affidavit on attachment. In determining the meaning of a statute it is the primary duty of the court to attempt to ascertain the meaning the legislature attributed to it when it was adopted. In order to assist the courts in fulfilling this duty, experience has led to the adoption of certain canons of construction which are suggested by the parties as being peculiarly applicable to the present situation.

The first one, which has been repeatedly approved by this court, is that when the legislature of one state adopts a law from another state, it is adopted with the meaning which has, previous to the time of adoption, been given the statute by the courts of the state from which it is taken. *Goldman* v. *Sotelo,* 8 Ariz. 85, 68 Pac. 558; *Lowell* v. *Lowell,* 29 Ariz. 138, 240 Pac. 280; *State* v. *Meeks,* 30 Ariz. 436, 247 Pac. 1099. We have held, however, that while this rule will be followed generally, yet if it appears to us that the meaning attributed to the statute by the courts of the sister state is not in accordance with

sound logic or the fundamental principles of common sense and justice, we are not absolutely bound to follow those decisions. *Kingsbury* v. *State,* 28 Ariz. 86, 235 Pac. 140; *Phoenix Title & Trust Co.* v. *Old Dominion Co.,* 31 Ariz. 324, 253 Pac. 435, 59 A. L. R. 625.

It is therefore necessary for us, in determining whether this canon will solve the question before us, to decide, first, the source from which the statute in question comes, and second, whether the interpretation placed thereon by the courts of the state from which it is taken is consonant with the fundamental principles of logic and justice, and the declarations of our own legislature upon the matter. The first Arizona statute covering the subject of attachment is found in the Code of 1877 and was admittedly taken from California. In 1887, however, our statutes were revised and title IV, chapter 1 of the Code of 1887, which deals with the subject of original attachments, is almost a *verbatim* copy of title IX, chapter 1, articles 152 et seq., of the Revised Statutes of Texas of 1879. This court in the case of *Wartman* v. *Pecka,* 8 Ariz. 8, 68 Pac. 534, in discussing that Code said: " . . . Our attachment law in this respect follows that of Texas, from whence it came to us, . . . " and in the later case of *Lount* v. *Holladay,* 28 Ariz. 16, 234 Pac. 1084, in interpreting paragraphs 1421 and 1422, Revised Statutes of Arizona 1913, which are identical with sections 67 and 68 of the Code of 1887, we said:

"As was said in *Wartman* v. *Pecka,* 8 Ariz. 8, 68 Pac. 534, our attachment statute came to us from Texas, and the decisions thereon in that state are very persuasive. . . . "

In 1891, however, our legislature for some reason came to the conclusion that sections 40, 41 and

43 of the Code of 1887, which were substantially copies of articles 152, 153 and 155 of the 1879 Texas Statutes, were insufficient or unsatisfactory, and proceeded to amend them by substituting for sections 40 and 41 provisions which, both in form and substance, differ so widely from the Texas statute, that the only similarity thereto is the fact that they both deal with the subject of attachment, and by repealing entirely section 43, which was the only provision of the law permitting attachments before a debt was due, and which reads as follows:

"43. The writ of attachment above provided for may issue, although the plaintiff's debt or demand be not due, and the same proceeding shall be had thereon as in other cases, except that no final judgment shall be rendered against the defendant until such debt or demand shall become due."

Nothing like sections 40 and 41, *supra,* as they appeared after they were amended by the statute of 1891, has ever appeared in the attachment statutes of the state of Texas. But upon examining the California Code of Civil Procedure of 1873–74, we find that sections 537 and 538, thereof, which had been in force in California for many years at the time our legislature adopted the statute of 1891, while differing in some minor respects from that statute are in substance almost identical with sections 40 and 41, as amended. These amendments of 1891 were carried forward into the Civil Code of 1901 as paragraphs 332 and 333 thereof, and such paragraphs have come down through the Revised Statutes of 1913 into the Revised Code of 1928 with no material changes in substance, although in the last named Code the language is somewhat shortened and simplified. It is obvious to us, therefore, that while, as stated in *Wartman* v. *Pecka, supra,* and *Lount* v. *Holiday,*

*supra,* the attachment provisions of the Code of 1887 were unquestionably taken from those of Texas, and the Texas decisions made before 1887 are very persuasive indeed as to their meaning, yet in 1891 the legislature substituted for sections 40 and 41 of the Code of 1887, two new paragraphs which were obviously taken from the law of California, and which still appear in our law. Under such circumstances, applying the canon of construction stated above, so far as matters arising under the sections of our present attachment statute, which came from Texas, are concerned we should, in the absence of strong ground to the contrary, follow the Texas decisions, but where it appears that the portions of the statute under construction were taken from California, the California decisions would be the better authority. In case, however, the two portions of the statute are of such a nature that the result of applying rules of construction from two different states would produce uncertainty and confusion in the law of Arizona, we think that we should consider the statute as a whole, and apply such rule as, in our opinion, is most in harmony with the fundamental principles of law and equity.

The only case from California cited to us as applicable is that of *Fisk* v. *French,* 114 Cal. 400, 46 Pac. 161, decided at a time when sections 537 and 538, Code of Civil Procedure, *supra,* were in force. This case holds impliedly, though not directly, that an affidavit for attachment made under such sections is traversable. It appears, however, that at that time sections 556 and 557 of the same Code specifically authorized a motion to discharge a writ of attachment on the ground that it was improperly or irregularly issued, and provided that the motion would be heard on evidence and affidavits, including the affidavit on

which the attachment was issued. No such provisions have ever appeared in the statutes of Arizona, so we think the California precedent is of very little force, even though the particular sections under construction were taken from the California Code. Under the circumstances of the case we think neither the Texas nor the California decisions are controlling or, indeed, of any particular value in interpreting the sections in question.

 We consider then the second canon of construction discussed by the briefs of the parties. It is the one expressed in the old phrase "*expressio unius est exclusio alterius.*" In 1891, the legislature, as we have stated, adopted the California statute so far as the cause for attachment and the form of the affidavit in support thereof for a debt already due was concerned, and repealed the statute which authorized attachments for a debt not due. From 1891 to 1901, therefore, no attachment could be made for a debt not due. In 1901 the legislature, evidently concluding that such a situation was not in the interests of justice, after re-enacting the affirmative provisions of the act of 1891 as sections 332 and 333 of the Civil Code of 1901, added thereto section 335. This section re-enacted the repealed section 43 of the Code of 1887 and added thereto provisions for the form of affidavit to be made for a debt not due. These provisions included most of the matters set forth in sections 537 and 538 of the California Code of Civil Procedure amended in 1873–74, together with those of article 152 of the Texas statutes of 1879. Had our legislature gone no further it would have been necessary for us, in order to determine whether or not a traverse of any of the affidavits required as precedent to the issuance of a writ of attachment was permissible, to resort to canons of construction other than

the two we have stated. The legislature, however, removed any question as to its intent by enacting section 336, Civil Code of 1901, which reads as follows:

"336. In the case of an attachment for a debt not due, the facts set forth in the affidavit for attachment may be traversed by the defendant, and the issue so formed shall be tried before the court or a jury as other cases."

Therein it has explicitly stated that when the debt is *not* due the facts set forth in the affidavit for attachment may be traversed, and an application of the rule of *expressio unius est exclusio alterius* inevitably leads to the conclusion that when the debt *is* due, the affidavit in support thereof may not be traversed.

Nor can we say that such an enactment by the legislature is not based on sound principle and logic. When the debt is already due, the case can and presumably will be promptly determined on its merits, and since the plaintiff in attachment must give bond to protect the defendant before the attachment is permitted, the probability is that no great and irremediable harm will be done to the latter by allowing the attachment to stand awaiting a determination of the case on its merits.

On the other hand, the legislature may well have assumed that since when the debt is not due the case cannot proceed to final judgment until it becomes due, it might work a much greater injustice on a defendant to tie up his property for an indefinite period, and so has permitted him the right to controvert the allegations in the affidavit, which alone authorize the attachment, and to try that issue out while awaiting the time when the main issue in the case can be determined. We hold, therefore, that in view of the provisions of section 336, Civil Code 1901, which have

been brought down in substance, although not in exact language, through the Revised Statutes of 1913 into the Revised Code of 1928, an affidavit for attachment on a debt *which is due,* made under the provisions of section 4242, Revised Code 1928, is not traversable.

Under these circumstances it is unnecessary for us to determine whether the trial court erred in rejecting the evidence offered by plaintiff as to whether or not the debt was fully secured.

The order appealed from is set aside and the case remanded for further proceedings in accordance with the views expressed in this opinion.

McALISTER and ROSS, JJ., concur.