[Civil No. 4375.  Filed November 24, 1941.]

[119 Pac. (2d) 236.]

G. D. CARLEY, Appellant, v. JOHN C. LEE and ELIZABETH LEE, His Wife, Appellees.

Messrs. Perry, Silverthorne & Johnson, for Appellant.

Mr. John W. Ray, for Appellees.

LOCKWOOD, C. J.—On November 30, 1936, M. E. Miller and Bessie L. Miller, his wife, were the owners of certain real property situate in Maricopa County. On that date they entered into an agreement of purchase and sale of the property with G. D. Carley, for the sum of $700, of which $300 was paid at the date of the agreement, and the balance was to be paid in monthly payments of not less than $15. A warranty deed for the property, together with a copy of the agreement, was placed in escrow with Arizona Title Guarantee and Trust Company. The following instrument was recorded in the office of the county recorder, in book 40 of Agreements, at page 520, on December 31, 1936:

*"Memorandum of Agreement*
*"Know All Men by These Presents:*
"That M. E. Miller and Bessie L. Miller, husband and wife, the parties of the first part, have agreed to sell, and G. D. Carley, a single man, the party of the second part, has agreed to purchase, the following described property: (Description follows) according to the terms and conditions of a certain agreement dated 30th day of November, 1936, held in escrow by the Arizona Title Guarantee and Trust Company.

"*In witness whereof,* the said parties have hereunto set their hands and seals this 30th day of November, 1936.

"M. E. Miller
"Bessie L. Miller
"G. D. Carley."

On April 14, 1937, defendant John C. Lee, being a creditor of the Millers, attached the real estate that had theretofore been sold to plaintiff Carley. At that time plaintiff still owed the Millers $325.01 on the purchase price of the property. On February 25, 1938, Lee, as plaintiff in the attachment suit above referred to recovered a judgment against the Millers, and on May 24, the attached property was sold under execution to Lee, this being after Carley had finished all payments under his contract to purchase the property and had received and recorded the deed from the Millers. On February 28, 1939, defendant Lee notified Carley that the property had been attached and sold under execution, this being the first time that the latter, who did not reside in Maricopa County, had any actual knowledge of any of Lee's proceedings. On May 31, 1939, Lee received a sheriff's deed to the property under his purchase. Thereafter Carley filed this suit against Lee and his wife to quiet title to the premises. Judgment was rendered in favor of the Lees, and Carley has appealed.

There is no dispute as to the facts, the only issues for our consideration being legal in their nature.

The first question is as to what rights an attaching creditor secures in property of his debtor, which has previously been sold, by reason of an attachment. There are two rules. The first is that the rights of a prior vendee are not affected in any manner thereby. *McDonald* v. *Curtis,* 119 Wash. 384, 205 Pac. 1041. The rule in Arizona, however, is that the attaching creditor steps into the shoes of the debtor and succeeds to the

rights of the latter, and where the property is subject to a previous agreement of purchase and sale, the only right of the attaching creditor is to receive any payments still due from the vendee under the contract of purchase. *Jarvis* v. *Chanslor & Lyon Co.,* 20 Ariz. 134, 177 Pac. 27; *Ellery* v. *Cumming,* 40 Ariz. 512, 14 Pac. (2d) 709, 83 A. L. R. 1081; *Valley Products, Inc.,* v. *Kubelsky,* 49 Ariz. 500, 68 Pac. (2d) 69.

■ The next question is whether, in order that the creditor may recover the payments still due, it is necessary that the vendee have actual knowledge of the attachment, or whether the filing of the attachment in and of itself gives constructive notice to the vendee, so that any future payments he may make to the vendor are at his peril. *Moyer* v. *Hinman,* 13 N. Y. 180, is the leading case on this point. Therein the court said:

" . . . I consider it equally well settled that the docketing of a judgment against the vendor affords no notice of its existence, either actual or constructive, to the prior vendee of the judgment debtor. Parties who deal with the debtor respecting his lands subsequently to the docketing of the judgment, are affected with notice. Such persons may make themselves perfectly safe in that particular, by searching the docket book of judgments in the proper office; and they will, of course, abstain from purchasing if they find the land which they are proposing to buy, encumbered by a judgment. So, it may be said, a party holding a contract upon which payments remain to be made, may, before making such payments, examine for judgments against the vendor; but it would be an intolerable inconvenience to require this, where the payments, as is usually the case, are to be made annually or oftener; and should such examination ever be strict, the vendee would have to run the risk of an incumbrance intervening, while he was going from the office where the search was made to the residence of the vendor, to make the payment. . . . "

and this case has been repeatedly followed in many other jurisdictions.

■ We consider next the effect of the recording of the agreement of sale above set forth. It is objected that this instrument does not give the details of the agreement of sale. It does specifically, however, state that there is an agreement of purchase and sale between the parties, it describes the property, and states with certainty where the precise terms may be ascertained by those who are interested therein. It is not necessary to entitle an instrument to record that it be in any particular language. If its legal effect is such that it is of a character which the recording statutes permit to be recorded, and its language sufficiently apprises third persons of the nature and substance of the rights claimed under it, it is constructive notice of such rights. *Standard Oil Co.* v. *Webb,* 149 La. 245, 88 So. 808.

■■ There is no doubt a specific conveyance of the property could be enforced by Carley as against the Millers upon this instrument for, while an agreement for the sale of real property to be enforceable must be in writing and definite and specific in its terms, yet it need not be in one paper, but may be in several, so long as they can be identified with certainty. *Bartlett-Heard L. & C. Co.* v. *Harris,* 28 Ariz. 497, 238 Pac. 327. An instrument of this kind may be recorded under our recording laws. And since no specific book for agreements of this nature is provided by statute, we think recording in a book entitled "Agreements" is sufficient to give the notice required by law. Sec. 849, Rev. Code 1928 (sec. 17–801, Ariz. Code 1939); *Stephen* v. *Patterson,* 21 Ariz. 308, 188 Pac. 131; *Kent* v. *Williams,* 146 Cal. 3, 79 Pac. 527.

■ We hold, therefore, that the recording of the instrument above referred to by Carley was notice to the world that he had an agreement of purchase and

sale with the Millers for the property involved herein; that under the law of Arizona the only right of a subsequent attaching creditor was to receive the balance of the payments still due to the Millers from Carley; that Carley was under no obligation to pay them to Lee unless and until he had actual notice of such attachment, and that since the record shows such notice did not exist until after Carley had completed his payments to the Millers and received and recorded his deed to the property, the trial court erred in refusing to quiet his title as against any title of the Lees which was dependent upon their attachment and purchase at execution sale.

Judgment reversed and case remanded with instructions to enter judgment in favor of plaintiff Carley.

McALISTER and ROSS, JJ., concur.