531 P.2d 193

The VALLEY NATIONAL BANK OF ARIZONA, a national banking association, Appellant,

v.

EDUCATIONAL CREDIT BUREAU, INC., a corporation, Appellee.

No. 1 CA–CIV 2236.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 28, 1975.

Rawlins, Ellis, Burrus & Kiewit by James M. Marlar, Phoenix, for appellant.

Lewis & Roca by Paul G. Ulrich, Sally S. Neely, Joseph E. McGarry, Phoenix, for appellee.

## OPINION

NELSON, Judge.

This appeal raises but one question: the sufficiency of the return of a writ of attachment in conjunction with a lawsuit on a promissory note issued in behalf of the appellee, Educational Credit Bureau, Inc. (ECB), to establish a lien against certain real property of individuals not parties to this appeal. If the writ of attachment is sufficient to establish ECB's lien on the real property, a second mortgage obtained by appellant, Valley National Bank (VNB), from the same third parties upon the same real property and recorded later than the questioned writ of attachment would be subordinate thereto. The trial court ruled the writ of attachment sufficient to establish a prior lien and we agree.

The facts essential to the determination of this appeal are brief and undisputed. In June of 1971, Charles C. Vance and his wife, Patricia, (Vances) were in financial distress. This distress later resulted in a bankruptcy proceeding by the Vances which was held by the federal district court not to be an impediment to this action. In re Vance, No. B72–225–PHX (1972); White v. Valley National Bank, No. CIV 72–464–PHX–WCF (1973).

On June 28, 1971, ECB sued the Vances for $30,300 due on a promissory note. At the same time, pursuant to A.R.S. § 12–1521 et seq., ECB caused a writ of attachment to be issued against certain real property of the Vances, the correct legal description of which was Lot 51, Paradise Valley Country Estates in Maricopa County, Arizona. On June 29, 1971, the Sheriff of Maricopa County recorded his endorsement and return of the writ with the Maricopa County Recorder as required by A.R.S. § 12–1531.A. The property was erro-

neously described in the Sheriff's return as:

"Lot 151, PARADISE VALLEY COUNTRY ESTATES, according to Maricopa County Recorder's docket No. 7278, Page 56."

Recorded at docket No. 7278, Page 56, supra, is a joint tenancy deed from another party to the Vances, accurately describing the property as "Lot 51, PARADISE VALLEY COUNTRY ESTATES." There is no "Lot 151" in the subdivision; the total number of lots is 55. It is undisputed that the Vances owned Lot 51, and there is not evidence that they owned any other lots in the subdivision.

Previously, on June 23, 1971, the Vances had executed the second mortgage in question in favor of VNB, as mortgagee, on Lot 51, but it was not duly recorded in the Office of the Maricopa County Recorder until July 1, 1971. VNB was allowed to intervene in the lawsuit by ECB against the Vances. Judgments were obtained against the Vances by both VNB and ECB. The trial court then held that ECB's lien, by virtue of the return of the writ of attachment on June 29, 1971, two days prior to the recording of VNB's mortgage, was superior to the lien of VNB.

VNB urges that the doctrine of strict construction which is generally applied to statutory remedies such as attachment, precludes the finding of a valid attachment in this case. However, a reading of the cases cited, Ordenstein v. Bones and Spencer, 2 Ariz. 229, 12 P. 614 (1887), (where there was no contract as required by the statute to support the writ of attachment); Steinfeld v. Menager, 6 Ariz. 141, 53 P. 495 (1898), (where no notice of attachment of livestock was served on owner and filed with county recorder); Hill v. Favour, 52 Ariz. 561, 84 P.2d 575 (1938), (where only the mortgage and not the note was purportedly attached, but not seized as statute requires; moreover, garnishment, not attachment, was the proper extraordinary remedy), clearly indicates a very specific

concern of our Supreme Court in holding that pre-judgment summary remedies provided by statute be strictly followed. The manifest intent of the court in these cases was to protect the owner or possessor of property from undue hardship and deprivation of its full use and enjoyment prior to a final adjudication of the creditor's right, if any, to the property.

█ No question has been raised as to the compliance by ECB with the statutory requirements for a valid attachment. The only question presented is whether the requirement of A.R.S. § 12–1531.B that "The return shall *describe the property attached with sufficient certainty to identify it* . . ." is satisfied. If that requirement is satisfied, the levy of the attachment was constructive notice to VNB of the lien. While we concur in the holdings of *Ordenstein, Steinfeld,* and *Hill,* supra, requiring strict compliance with the statutory provisions involved, that construction does not necessarily apply to the certainty with which the attached property need be described, particularly in view of the italicized words of A.R.S. § 12–1531.B. We perceive no difference in the necessity to describe accurately property being sold, traded, or otherwise commercially or noncommercially dealt with, and the necessity to describe it accurately for purposes of attachment and levy. In either case, if the property is not identified with a sufficient certainty in the public record, it will not be deemed conveyed, sold, traded or attached as to those parties which have a right to rely on the public record for either actual or constructive notice. The need for strict construction is directed at the procedures for creating a property interest by an extraordinary, summary, and involuntary procedure prior to a full determination of relative interests. See Ordenstein v. Bones and Spencer, supra; Steinfeld v. Menager, supra; Hill v. Favour, supra; A.R.S. § 12–1521 et seq.

█ The phrase regarding property description in A.R.S. § 12–1531.B was taken from Texas, and its decisions in this area are highly persuasive in the absence of Arizona cases on point. Lount v. Holladay, 28 Ariz. 16, 234 P. 1084 (1925); O'Malley Lumber Co. v. Martin, 45 Ariz. 349, 43 P. 2d 200 (1935). The language in Texas Rules of Civil Procedure, rule 606 (Vernon's, 1973), is identical to the language in question here. Both parties cite the 1964 decision of Manhattan Shirt Company v. Moore, 385 S.W.2d 486 (Tex.Civ.App. 1964), as well as numerous other Texas cases. Although the fact that our courts favor strict construction of the statutory means by which these summary remedies are executed may make reference to Texas decisions construing statutory language not going to these points unnecessary, we have reviewed them nonetheless. We fail to find any holdings applying any unusually restrictive canons of construction to words within statutes such as these which have ordinary and accepted meanings. Language used in a statute should be given its ordinary, common meaning as understood by the average man, unless obviously used in a technical sense, or unless such construction would result in an absurdity. State Tax Commission v. Peck, 106 Ariz. 394, 476 P.2d 849 (1970); Kilpatrick v. Superior Court, 105 Ariz. 413, 466 P.2d 18 (1970); Parise v. Industrial Commission, 16 Ariz.App. 177, 492 P.2d 426 (1971).

█ Clearly then, a description of "sufficient certainty to identify" as provided by the statute is not one which need be perfectly precise. The question in each case ultimately becomes one of fact as to whether the description was of sufficient certainty to identify the property. In adopting standards for this analysis, we deem decisions relating to the creation of other interests in land, be they created by deed, mortgage, deed of trust, attachment or otherwise, to be persuasive, since each method of creation depends upon recordation for efficacy as against third parties (see generally: A.R.S. §§ 33–411 through 419, and cross-references and citations thereunder).

In Carley v. Lee, 58 Ariz. 268, 119 P.2d 236 (1941), a memorandum of an agreement for sale of property by parties named Miller to Carley was duly recorded. The agreement made reference to a more specific unrecorded document in escrow. Lee, as a creditor of the Millers, filed suit and caused a writ of attachment to issue. Thereafter, Lee obtained a judgment against the Millers and sought to sell the property on the basis of his writ of attachment. Carley had paid all the payments under his contract for sale and recorded his deed from the Millers, but not until after Lee's attachment lien had been perfected. Carley had received no actual notice of the attachment. A sheriff's deed issued to Lee and he sued Carley to quiet title.

In holding for Carley, the Arizona Supreme Court found that the recording of an incomplete memorandum of agreement, even when there was no specific book for such recordings, and even where reference was needed to another agreement not of record, was sufficient constructive notice of all rights claimed under both documents. The subsequently perfected attachment lien could not defeat the prior recordation, even though reference had to be made to an unrecorded instrument to fully apprise the attaching creditor of the facts. The court's language, in responding to the contention that the recorded instrument did not provide sufficient information, is instructive:

> "It [the recorded memorandum of agreement] does specifically, however, state that there is an agreement of purchase and sale between the parties, it describes the property, *and states with certainty where the precise terms may be ascertained by those interested therein."* 58 Ariz. at 272, 119 P.2d at 238 (Bracketed material and emphasis added).

In approving the concept contained in *Carley,* supra, the court again instructs us in its decision in LeBaron v. Crismon, 100 Ariz. 206, 412 P.2d 705 (1966):

> "This court has held that the agreement need not be contained in one paper but may be in several *so long as they can be identified with reasonable certainty."* 100 Ariz. at 208, 412 P.2d at 706 (Emphasis added).

It is thus evident that reference to the docket number set out in the return of the writ of attachment before us is proper in determining the sufficiency of the description of the property sought to be attached.

The decision which the court finds most persuasive both as to factual matters and legal points is Gretna Finance Company v. Camp, 212 So.2d 857 (La.App., 1968). Both parties discuss this decision in their briefs.

In that case a writ of attachment was issued which was in all respects correct except that instead of describing the lot in question as "Lot 17 of Square 74 of the Terrytown Subdivision", it recited "Lot 17 of Square 274 of the Terrytown Subdivision." As a matter of fact, there was no Square 274 in the Terrytown Subdivision.

While the Louisiana Statute (LSA–RS 13:3851) is not identical to ours, its language regarding the description of property is apparently even more demanding. It requires *"an exact and complete* description of the immovable property to be seized." (Emphasis added).

The Louisiana court reviewed its attachment statutes, analogized the need for accurate descriptions of property in such cases to those required in mortgages, and held that the recordation and constructive notice elements in each case were identical. The court held the slight inaccuracy in the writ was clearly overcome by reference to the writ itself and other documents accurately referred to therein (survey of the subdivision; streets surrounding the square, survey of the lot), and reversed the trial court's dissolution of the writ of attachment.

█ In the case here for review, the trial court found that the Sheriff's return of the writ of attachment, although incor-

rectly describing the lot as 151 when it should have been 51, in all other respects fully and accurately described the property attached and made accurate reference to other documents (the deed, and from the deed to the subdivision plat) which showed that the Vances owned lot 51 and that there were only 55 lots in the whole subdivision in question. The property was described with sufficient certainty to identify it within the meaning of A.R.S. § 12–1531.-B so that the VNB is deemed to have had constructive notice of the lien at the time its mortgage from the Vances was recorded. We affirm the determination of the trial court that the lien of ECB was prior and therefore superior to that of VNB.

The judgment of the trial court is affirmed.

WREN and FROEB, JJ., concur.