808 P.2d 827

Gregory S. FUNK, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Commercial Structures of Arizona, Inc.,
Respondent Employer,

State Compensation Fund,
Respondent Carrier.

No. 1 CA–IC 89–075.

Court of Appeals of Arizona,
Division 1, Department D.

April 4, 1991.

John Winter, Chandler, for petitioner
Employee.

Christopher E. Kamper, Chief Counsel,
State Compensation Fund by Catherine A.
Santasine, Phoenix, for respondents Employer and Carrier.

Anita R. Valainis, Chief Counsel, The
Indus. Comm'n of Ariz., Phoenix, for respondent.

## OPINION

FIDEL, Judge.

In this review of an Industrial Commission award, we address one issue: Is any
occupationally caused scar, no matter how
slight, disfigurement within the meaning of
Ariz.Rev.Stat.Ann. § 23–1044(B)(22) (Supp.
1990), or must a scar mar one's appearance
for that statute to apply?

### I

In a work-related fall, claimant sustained
facial lacerations that healed with at least
one scar. Although the parties agree that
the scar was insubstantial, claimant argues
that it was *not* disfiguring, and the respondent employer and carrier argue the reverse. The battle takes this peculiar posture because it is not over compensation
for the scar, but compensation for a simultaneous, permanent, non-work-disabling injury to claimant's wrist.

Because claimant's residual wrist impairment does not diminish his earning capacity, his entitlement to permanent disability

compensation depends on whether that injury is classified as "scheduled" pursuant to Ariz.Rev.Stat.Ann. § 23–1044(B) (Supp. 1990). Workers sustaining scheduled injuries receive a statutorily fixed series of permanent disability payments whether or not their earning capacity is impaired; workers sustaining unscheduled injuries receive permanent disability benefits only if their earning capacity is impaired. *Compare* Ariz.Rev.Stat.Ann. § 23–1044(B) (scheduled injuries) *with* Ariz.Rev.Stat. Ann. § 23–1044(C) (unscheduled injuries).

Claimant's wrist impairment, a five per cent loss of use of the left (minor) hand, would ordinarily be compensated as a scheduled injury pursuant to §§ 23–1044(B)(12) and (21). However, when a claimant receives multiple scheduled injuries at the same time, the injuries are removed from the schedule and compensated only insofar as their combined impact diminishes earning capacity. *See, e.g., Wollum v. Industrial Comm'n*, 100 Ariz. 317, 320–21, 414 P.2d 137, 140 (1966) (citing *Ossic v. Verde Central Mines*, 46 Ariz. 176, 49 P.2d 396 (1935)).

"[P]ermanent disfigurement about the head or face" is designated a scheduled injury in § 23–1044(B)(22). By asserting that claimant sustained such disfigurement, respondents seek to establish that he sustained multiple injuries and thereby remove his wrist injury from the schedule.

## II

This matter came before the Industrial Commission when claimant requested a hearing to challenge respondents' classification of his injury as unscheduled. The parties disputed whether claimant's industrial injury had resulted in "permanent disfigurement about the head or face."

Fact-finding was complicated because, by the time of hearing, claimant's work-related scar could not be seen; it had been obliterated during a non-occupational automobile collision, when claimant sustained substantial lacerations and an overlay of scarring on the same part of his face. The parties and the administrative law judge were obliged to reconstruct how the work-related scar had earlier appeared.

There was evidence from three sources. One was a "facial disfigurement viewing chart," on which a representative of the respondent carrier, eight months from the date of injury, diagrammed two scars—a vertical scar directly between the eyebrows and a diagonal scar ending at the inner corner of the left eyebrow. The scars were described as "visible from 3–4 feet," and further described as follows: "both are very thin lines[;] one in the middle is lighter[;] the one over eyebrow is a little raised—all the forehead is reddish looking."

The second source was claimant, the only witness at the hearing. Claimant testified that he "never had any scarring in the center of his forehead," but acknowledged a "little scar" over the left eyebrow. Claimant described this scar as follows:

Q. Did you feel it disfigured you, that initial scar?

A. No, not at all.

Q. Were you embarrassed by the appearance of it at all?

A. No.

Q. Was it observable at all?

A. I mean, you had to look for it, yes. You know, if you looked for it, it was there.

\* \* \* \* \* \*

Q. Now, if you hadn't had your recent auto accident where you hit the rear-view mirror, ... [w]ould you be able to point it out to me?

A. It was receding quite a bit and healing. I'm—I would say you probably would be able to see it if I pointed it out.

The third source was a pair of photographs supplied by claimant, one overexposed and the other underexposed. The administrative law judge did not find a vertical scar discernible between the eyebrows in either photo. In one of the photographs, however, in an area that claimant confirmed as the locus of the eyebrow scar, the administrative law judge described "[k]ind of a small, flat, bright spot. Now,

the question whether it's disfiguring, well, perhaps that's something else."

The administrative law judge did not decide whether the scar was "disfiguring" in his findings and award. He decided, rather, that evaluative judgments were immaterial in applying the statutory standard of "permanent disfigurement about the head or face." He concluded:

A.R.S. § 23–1044(B)(22) does not contain qualifying words. It does not say that a residual mark or scar must be unsightly or that it must otherwise have any particular quality to it. This statute uses only the word disfigurement.... In the absence of qualifying words in our statute, it seems reasonable to conclude that a disfigurement is presumed from the existence of a scar. If the worker has the scar, which the applicant does, it can only be ignored as a disfigurement if someone is willing to read a scar "quality" factor into our statute. It is concluded that the applicant's scar was a disfigurement within the meaning of the statute, and therefore, being one of the multiple residuals, applicant's claim was appropriately evaluated as involving an unscheduled permanent partial disability.

As claimant's combination of injuries, treated as unscheduled, caused no loss of earning capacity, he was awarded no permanent disability compensation. This special action followed summary affirmance on administrative review.

### III

It is not our appellate function to attempt a qualitative judgment whether claimant's scar was disfiguring in fact. We consider only whether the administrative law judge correctly decided as a matter of law that such judgments are irrelevant to the application of § 23–1044(B)(22) and that any facial scar constitutes "disfigurement" within that statute.

Arizona courts have not previously examined this question. Most reported cases have involved indisputably serious disfigurement. *See Ossic v. Verde Central Mines*, 46 Ariz. at 180, 49 P.2d at 398 (mangled face); *Marsh Aviation of Mara-na v. Industrial Comm'n*, 130 Ariz. 169, 170, 634 P.2d 981, 982 (App.1981) (serious facial burns); *Moreno v. Industrial Comm'n*, 122 Ariz. 298, 299, 594 P.2d 552, 553 (App.1979) (severe scar on left cheek from chain saw); *Milam v. Industrial Comm'n*, 12 Ariz.App. 308, 470 P.2d 113 (1970) (injury to eye and loss of four teeth). One case involved less substantial scarring. *See Scott v. Industrial Comm'n*, 11 Ariz. App. 20, 22, 461 P.2d 499, 501 (App.1969) (scar "over the right side of the distal ends of the nose," described as "practically not noticeable" at two to three feet from some angles, but as "noticeable in the right profile at a distance of probably five feet"). In that case, however, the meaning of "disfigurement" was not at issue; the parties agreed that the claimant's scar was disfiguring to some degree. It is thus a question of first impression whether all facial scars constitute "disfigurement" under Ariz.Rev. Stat.Ann. § 23–1044(B)(22).

In addressing this question, we recognize that our disfigurement statute, unlike many, does not expressly indicate that disfigurement must be serious, either in appearance or effect. *Compare, e.g.*, Ariz. Rev.Stat.Ann. § 23–1044(B)(22) *with* La. Rev.Stat.Ann. § 23:1221(4)(p) (West Supp. 1991) ("seriously and permanently disfigured") *and* N.M.Stat.Ann. § 52–1–22 (1982) ("serious permanent disfigurement about the face or head"). *See generally* 4 A. Larson, *Workmen's Compensation Law* Appendix B–13–1 to –7 (1989).

Yet the word "disfigurement" itself imports some measure of qualitative judgment. "Disfigurement" is defined by reference to the verb "disfigure." *See generally The Random House Dictionary of the English Language* 565 (unabridged 1967). To "disfigure" is defined in turn as "1. to mar the appearance or beauty of; deform; deface.... 2. to mar the effect or excellence of." *Id.* Another dictionary defines "disfigure" as "to deform; to impair, as shape or form; to mar; to deface; to injure the appearance or attractiveness of." *Webster's New Universal Unabridged Dictionary* 524 (2d ed. 1983). A third defines "disfigure" even more seriously as "to im-

pair (as in beauty) by deep and persistent injuries <a face *disfigured* by smallpox>." *Webster's Ninth New Collegiate Dictionary* 362 (1985). These dictionaries collectively demonstrate connotations of marring inherent in the term.

Other courts have recognized these connotations in applying statutes similar to ours. In *St. Laurent v. Kaiser Alum. & Chem. Corp.*, 113 R.I. 10, 316 A.2d 504 (1974), for example, the Supreme Court of Rhode Island interpreted a statute that, in words almost identical to ours, provided scheduled compensation "[f]or permanent disfigurement about the face, neck, hand or arm...." R.I.Gen.Laws § 28–33–19(n) (1968) *quoted in St. Laurent*, 316 A.2d at 505 n. 1 (current version at R.I.Gen.Laws § 28–33–19(a)(14)(B) (Supp.1990)). Although that statute, like ours, specified no qualitative level of disfigurement, the Supreme Court of Rhode Island explained the connotations inherent in the term:

> [A] disfigurement is "that which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, misshapen or imperfect or deforms in some manner." *Superior Mining Co. v. Industrial Comm'n*, 309 Ill. 339, 340, 141 N.E. 165, 166 (1923).... It must be an "observable impairment of the natural appearance of a person." *Arkin v. Industrial Comm'n*, 145 Colo. 463, 472, 358 P.2d 879, 884 (1961).

*St. Laurent*, 316 A.2d at 506; *see also Jones v. Grinnell Corp.*, 117 R.I. 44, 362 A.2d 139 (1976).

The Maryland Court of Appeals has likewise required qualitative judgment in applying a statute that specifies no qualitative level of disfigurement. Md.Ann.Code Art. 101, § 36(3)(f) (Supp.1990) establishes compensation for "other mutilations and disfigurements not hereinbefore provided for." The Maryland cases interpret "disfigurement" in that statute as "an outward observable scar or mutilation which tends to mar the appearance of the body." *Bethlehem Steel Co. v. Hughes*, 223 Md. 6, 9,

161 A.2d 451, 452 (1960) (quoting *Bethlehem–Sparrows Point Shipyard v. Damasiewicz*, 187 Md. 474, 480, 50 A.2d 799, 802 (1947)).

We are guided by these cases, and also by the precept that statutory language "should be given its ordinary, common meaning as understood by the average man, unless obviously used in a technical sense, or unless such construction would result in an absurdity." *Valley National Bank of Ariz. v. Educational Credit Bureau, Inc.*, 23 Ariz.App. 148, 150, 531 P.2d 193, 195 (1975). We do not hold that disfigurement must be "serious" to fall within Ariz.Rev.Stat.Ann. § 23–1044(B)(22). Our statute, as we have noted, omits such a requirement. We do hold, however, as the Rhode Island and Maryland courts have held, that to satisfy the ordinary common meaning of "disfigurement," a scar must cause an observable marring or impairment of the natural appearance of its bearer.

## IV

In rejecting the claimant's argument, the administrative law judge commented as follows:

> Applicant's position is that the scar is an almost unobservable mark which is by no means disfiguring. Therefore, applicant reasons, the mark should be disregarded. The applicant's argument in this respect could be persuasive, even to the point of being conclusive, but for the specific language of A.R.S. § 23–1044(B)(22).

Because we have interpreted the statutory language differently, the Industrial Commission award is set aside and the case remanded for new hearing.

BROOKS, P.J., and TAYLOR, J., concur.