Theresa M. HAWKINS

v.

Leo P. GADOURY.

No. 96–262–Appeal.

Supreme Court of Rhode Island.

June 24, 1998.

Peter A. Clarkin, Michelle Lee Iacovelli, for Plaintiff.

Linda Rekas Sloan, Warwick, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Contribution, indemnity, and subrogation claims by and between alleged joint tortfeasors and their insurers are the subjects of this appeal. A Superior Court motion justice granted summary judgment to the defendant, Leo P. Gadoury (Gadoury), with respect to contribution and indemnification claims filed against him by the plaintiff, Theresa M. Hawkins (Hawkins). Hawkins sued Gadoury after she settled an automobile-accident lawsuit brought against her by one Richard Pelletier (Pelletier), a third-party motorist who was injured in the accident. The motion justice decided that the three-year statute of limitations for personal-injury actions barred Hawkins' lawsuit against Gadoury.

In granting summary judgment, the motion justice reasoned that because Hawkins' insurer, Progressive Casualty Company (Progressive), was the source of the settlement proceeds paid to Pelletier, Progressive would

have subrogation rights vis-à-vis Hawkins' claims against Gadoury and, therefore, these claims were subject to the three-year personal-injury statute of limitations that had already expired when Hawkins filed her action. However, in considering Hawkins' appeal from this judgment, we conclude that because the subrogation issue was irrelevant to whether the contribution and indemnification claims filed against Gadoury were time barred, we reverse and remand this case for further proceedings.

### Facts and Travel

On February 9, 1990, motor vehicles operated by Hawkins and Pelletier collided at the intersection of Gadoury Street and Read Avenue in the town of Coventry. Gadoury owned a parcel of real estate located on one corner of that intersection. Pelletier sued Hawkins for the personal injuries he sustained in the accident. Pelletier, however, did not sue Gadoury, and Hawkins neither filed a third-party complaint against Gadoury nor otherwise sought to join him in the Pelletier lawsuit or in her settlement negotiations with Pelletier.

Before Pelletier's suit against Hawkins could be tried, they reached a settlement agreement pursuant to which Progressive, in its capacity as Hawkins' liability carrier, funded the $65,000 settlement payment to Pelletier on Hawkins' behalf. In exchange Pelletier executed a release, effective February 2, 1995, in which he agreed to "release, acquit and forever discharge" Hawkins, Progressive and also Gadoury, even though Gadoury was not a party to the lawsuit and did not otherwise participate in the settlement.

On September 27, 1995, nearly five and one-half years after the initial accident but less than one year after the above-described payment and release, Hawkins sued Gadoury alleging that the overgrown hedges and shrubbery sprouting from Gadoury's property had obscured her view of the intersection and caused her to collide with Pelletier. Hawkins asserted that she ought to recover from Gadoury all of the $65,000 paid to Pelletier. She invoked two alternative theories to support her right to recover: (1) common-law indemnity or (2) contribution under the Uniform Contribution Among Joint Tortfeasors Act (UCAJTA or the act), G.L.1956 chapter 6 of title 10. Having received the $65,000 payment and having released Gadoury from liability, Pelletier was not joined in this second litigation in any way.

Gadoury moved for summary judgment on the grounds that Hawkins' lawsuit was in substance an insurer's "subrogation action" and therefore barred by G.L.1956 § 9–1–14(b)'s three-year limitations period applicable to actions for personal injuries.[1] Hawkins opposed the motion arguing that because her suit was one for indemnity or contribution, it was not subject to § 9–1–14. She argued that her claim was circumscribed only by the one-year post-payment limitations period for contribution actions set forth in § 10–6–4 of UCAJTA,[2] or by the general ten-year limitations period of § 9–1–13(a) applicable to indemnity claims, as discussed in this Court's decisions in *Silva v. Home Indemnity Co.*, 416 A.2d 664 (R.I.1980), and *Helgerson v. Mammoth Mart, Inc.*, 114 R.I. 438, 335 A.2d 339 (1975).[3]

A Superior Court motion justice, apparently analogizing this case to the situation presented in *Silva*, granted Gadoury's motion, stating, "The Court believes this is, in fact, a subrogation case and the three-year statute,

---

1. General Laws 1956 § 9–1–14(b) provides, "Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after."

2. General Laws 1956 § 10–6–4 provides, "**Payment as prerequisite—Limitation of actions.**—A joint tortfeasor is not entitled to a final money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof. Actions for contribution shall be commenced not later than one (1) year next after the first pay-

ment made by a joint tortfeasor which has discharged the common liability or more than his pro rata share thereof."

3. Section 9–1–13 provides in part, "**Limitation of actions generally * * ***—(a) Except as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after." The period was increased from six to ten years in 1978. *See* P.L.1978, ch. 299, § 2 (ten years); P.L.1965, ch. 55, § 6 (six years).

therefore, applies, and this proceeding was brought outside it, and, therefore, summary judgment will issue." Assuming without deciding that Progressive·· has subrogation rights vis-à-vis Hawkins' claims against Gadoury, we respectfully disagree with the motion justice that because this is "a subrogation case," it is therefore governed by the three-year limitations period set out in § 9–1–14. For this reason, we reverse the granting of summary judgment.

### Analysis

The parties do not dispute that if Hawkins' allegations against Gadoury could be established at trial—that is, if Hawkins could prove that Gadoury negligently maintained the vegetation hedging his property such that it obscured the vision of passing motorists like Hawkins and Pelletier—then Gadoury and Hawkins would be joint tortfeasors within the meaning of the act. *See Wilson v. Krasnoff*, 560 A.2d 335, 339 (R.I. 1989); Uniform Contribution Among Tortfeasors Act (Uniform Act), 12 U.L.A. 185, 188 prefatory note (1955 revision) (1996) ("an injury resulting from the joint tort of two or more persons involves each of them, jointly and severally, in liability for the entire damage").

Rhode Island has adopted the 1939 version of the Uniform Act, which defines joint tortfeasors as "two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Section 10–6–2; *Wilson*, 560 A.2d at 339; *Augustine v. Langlais*, 121 R.I. 802, 804, 402 A.2d 1187, 1189 (1979). Section 10–6–3 of Rhode Island's version of the Uniform Act expressly provides that the "right of contribution exists among joint tortfeasors; provided however, that when there is a disproportion of fault among joint tortfeasors, the relative degree of fault of the joint tortfeasors shall be considered in determining their pro rata shares [of the injured party's damages]." Indeed, this comparative-fault provision is the heart of the act and the key

to its creation of a cause of action unknown to the common law.[4]

■ If Hawkins had used her own funds to pay $65,000 to Pelletier (rather than using the liability-policy proceeds obtained from her insurer, Progressive) and if she had sued her alleged cotortfeasor, Gadoury, for contribution under the UCAJTA, Hawkins would have been required to prosecute this suit within one year after the payment—not within three years of the vehicle accident. On this point, the UCAJTA is clear. Because the injured party (in this case Pelletier) is the "lord of his action," he or she may choose to sue just one of, several of, or all the alleged cotortfeasors who allegedly caused his or her injuries. *See* Uniform Act, 12 U.L.A. at 188 prefatory note. But the one-year limitation period contained in § 10–6–4 allows any joint tortfeasor who has been singled out for suit by the injured party to have a one-year postpayment grace period within which to seek contribution from his or her cotortfeasors who, according to Hawkins, ought to reimburse her for their respective pro rata shares of the discharged common liability. *See Merrill v. Trenn*, 706 A.2d 1305, 1311 (R.I.1998); *Wilson*, 560 A.2d at 339; Uniform Act, 12 U.L.A. at 188 prefatory note (driving policy of the Uniform Act is to avoid the situation wherein "the injured person may confer immunity from contribution and at the same time secure complete compensation from the luckless tortfeasor whom he wishes to hold liable").

■ A contrary reading of the act would subject the first-sued tortfeasor to the inequity resulting from an eleventh-hour suit filed by the injured party just a few weeks or days before the expiration of the personal-injury statute of limitations. Indeed the facts of this case bear out this very concern. Pelletier actually sued Hawkins just one week before the expiration of the three-year statute-of-limitations period on his personal-injury cause of action, and he caused the complaint and summons to be served on

4. The common law's refusal to recognize contribution actions between joint tortfeasors was in part based upon the notion that "courts should not lend their aid to rascals in adjusting differ-

ences among them." Uniform Contribution Among Tortfeasors Act (Uniform Act), 12 U.L.A. 185, 188 prefatory note (1955 revision) (1996).

Hawkins a mere four days before the expiration of the three-year deadline. If Hawkins had not settled and if Pelletier eventually had obtained a judgment against Hawkins for the whole amount of his injuries,[5] Hawkins would have been unable to sue other joint tortfeasors for contribution if the same three-year-limitations period applicable to personal-injury actions was also applicable to her contribution cause of action. The UCAJTA avoids this result by providing for a one-year post-payment-limitation period applicable to contribution claims. *See* § 10–6–4. And this period does not even begin to run until the tortfeasor discharges the common liability shared by all the joint tortfeasors. *Id.* In so providing, the act recognizes that a cause of action for contribution is separate and distinct from the personal-injury cause of action that arose out of the original accident or tort that initially accrued to the injured party.

A claim for indemnity stands on similar footing. Whereas contribution seeks to allocate fault proportionately among several wrongdoers, indemnity is a right founded upon equitable considerations arising "where one person is exposed to liability by the wrongful act of another in which he does not join" such that the indemnitor will be "liable for the whole outlay and not just a pro rata share." *Helgerson*, 114 R.I. at 441–42, 335 A.2d at 341; *see also Wilson*, 560 A.2d at 341. As we have stated,

"The common law right of indemnity, on the other hand, refers to those situations where a person who without fault on his part is compelled to pay damages occasioned by the negligence of another." *Silva*, 416 A.2d at 667 (quoting *May Trucking Co. v. International Harvester Co.*, 97 Idaho 319, 543 P.2d 1159, 1161 (1975)).

Although the UCAJTA does not create a separate statutory right of indemnity, the common-law action has been preserved and remains a viable theory of recovery in this jurisdiction. *See* § 10–6–9; *Wilson*, 560 A.2d at 341; *Silva*, 416 A.2d at 666.

With regard to the indemnity count in Hawkins' complaint, the case at bar is analogous to the factual scenario addressed in *Helgerson*. There the injured party, Helgerson, accused Mammoth Mart, a retail store, of negligently keeping ammunition in a display case accessible to store patrons. One O'Halloran, a minor, absconded with some of this ammunition and later discharged it from a pistol at a reservoir, thereby injuring Helgerson. After Helgerson sued Mammoth Mart, the latter sought to implead O'Halloran on indemnity grounds. But O'Halloran demurred, contending that Mammoth Mart had no viable cause of action against him. *Helgerson*, 114 R.I. at 439–40, 335 A.2d 339. This Court held that Mammoth Mart had stated a claim for which relief could be granted if the evidence later established that "O'Halloran's act was the active and primary cause of [Helgerson's] injury." *Id.* at 442, 335 A.2d at 341.

Although the *Helgerson* case contains no discussion of the applicable statute of limitations, its factual scenario is susceptible to the same hypothetical injustice described above. If Mammoth Mart's indemnity claim (which it had every right to assert) were to arise at the time of the initial tort and if it were subject to the same limitations period as an action founded upon that tort, Mammoth Mart's indemnity claim potentially could have been cut off in its infancy. If Helgerson had filed suit a day before the personal-injury-limitations period ran, Mammoth Mart would have had no time within which to identify and to sue O'Halloran, whom it alleged to be the primary tortfeasor. Indeed, until served with Helgerson's complaint, Mammoth Mart may have been completely unaware that any injury or accident had occurred. However, as intimated by the *Silva* court's obiter dicta, *see* 416 A.2d at 666, Mammoth Mart's indemnity claim would have been subject to the six-year general-limitations period (subsequently increased to the current ten-year period) applicable to civil actions, and the running of that period would not commence until Mam-

---

5. A tortfeasor, of course, may be severally liable for the whole amount of a plaintiff's damages even if the actions of a cotortfeasor who is not a party to the litigation were partially responsible for the plaintiff's injuries. *See Wilson v. Krasnoff*, 560 A.2d 335, 340 (R.I.1989).

moth Mart had discharged the common liability.[6]

■ Gadoury argued to the motion justice that because Progressive and not Hawkins is responsible for the $65,000 payment in this case, Progressive is the real party in interest here.[7] And because any claim that Progressive has against Gadoury arises from Progressive's right of subrogation to Hawkins' right to sue, Gadoury claimed that Hawkins' suit was really a subrogation action, not a contribution claim. Accordingly, Gadoury argued, a different result should obtain. The motion justice apparently accepted this argument and dismissed the suit. Because we disagree that Progressive's alleged subrogation to Hawkins' claims would have this effect, we conclude that the motion justice erred in his ruling.

### A

The distinctions separating the fundamental concepts of subrogation, indemnity and contribution provide the analytical keys to this case. First, it is important to distinguish between Hawkins' claim for contribution against Gadoury on the one hand and, on the other, the tort action that gave rise to the alleged common tort liability shared jointly by Hawkins and Gadoury.

"A cause of action for contribution is separate and distinct from the underlying cause of action for tort in which the cause of action for contribution has its roots. Accordingly, the statute of limitations governing such underlying action for tort does not apply to the action for contribution, and the period within which an injured party must commence his action for tort, and the fact that such period has expired, are irrelevant when a joint tortfeasor who has paid more than his share seeks contribution from another with whom he shares joint liability." Maurice T. Brunner, An-

notation, *What Statute of Limitations Applies to Action for Contribution Against Joint Tortfeasor,* 57 A.L.R.3d 927, 929 (1974).

■ Subrogation is an entirely separate concept from either contribution or indemnification. "[I]n its broadest sense, [subrogation] is the substitution of one person for another, so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies and securities. The doctrine is derived from the civil law from which it has been adopted by the courts of equity." *Silva,* 416 A.2d at 667 (quoting *May Trucking Co.,* 543 P.2d at 1161). Otherwise described, "[s]ubrogation places the subrogated party in the *shoes of the creditor* and entitles him to the rights which the creditor had in respect to the debt or obligation. Defenses which would not have been available against the creditor or obligee cannot, as a rule, be interposed against the subrogee, *including the defense of limitations.*" 73 Am.Jur.2d *Subrogation* § 129, at 681–82 (1974). (Emphases added.)

In *Silva,* we probed the interplay between subrogation and statutes of limitation. There, the plaintiff Silva was allegedly injured by Louis Pucino (Pucino), an uninsured owner of the vehicle that struck Silva. 416 A.2d at 665. Instead of pursuing Pucino, Silva sued his own insurer, Home Indemnity Company (Home Indemnity), pursuant to the underinsured-motorist provisions in his automobile policy. *Id.* Home Indemnity in turn sought to implead Pucino, who, it argued, would be liable to it for any moneys it owed to Silva. *Id.* However, because Home Indemnity filed this third-party action against Pucino more than three years after the original accident, Pucino moved to dismiss on timeliness grounds. *Id.* In resolving this issue, we noted that "[t]he final distinction between subrogation and indemnity which is the key to this appeal, is the effect each has

---

**6.** Note that, as was its right, Mammoth Mart sought to implead O'Halloran under Rule 14 of the Superior Court Rules of Civil Procedure. Rule 14(a) provides that a third-party defendant may be joined if that party "is *or may be* liable to the defendant for all or part of the plaintiff's claim against the defendant." (Emphasis added.) *See Helgerson v. Mammoth Mart, Inc.,* 114 R.I. 438, 440, 335 A.2d 339, 340 (1975). Howev-

er, there is no requirement that a defendant *must* implead such a third party in the initial lawsuit.

**7.** As previously stated, for the purposes of this opinion only, we shall assume arguendo that Progressive should be considered the real party in interest in this lawsuit.

on the statute of limitation. An insurer's claim by subrogation is derivative from that of the insured, and it is subject to the same statute of limitation as though the action were sued upon by the insured." *Id.* at 667 (quoting *May Trucking Co.*, 543 P.2d at 1161). We concluded that because "the subrogee [Home Indemnity] is entitled to all of the rights and disabilities which could be asserted in an action by the subrogor * * * Home may recover, if at all, on the basis of its subrogation to the rights that its insured [Silva] would have had against Louis Pucino. Such rights would have been barred by the running of the statute of limitations *in regard to actions for personal injury.*" *Id.* at 668. (Emphasis added.)

We are in full accord with *Silva* that the insurer in this case, Progressive, "may recover, if at all, on the basis of its subrogation to the rights that its insured," Hawkins, would have against Gadoury. However, whereas in *Silva* the insurer was subrogated to and sought to prosecute a *personal-injury tort claim* formerly held by its insured/subrogor, the claim to which Progressive is subrogated in this case is Hawkins' *contribution/indemnification action* against a joint tortfeasor. Just as Home Indemnity was subject to the statute of limitations applicable to its subrogor's personal-injury action, Progressive is subject to the statutes of limitations applicable to its subrogor's contribution and/or indemnification claims. And the statute applicable to Hawkins' contribution claim is § 10–6–4, which mandates that a contribution action must be brought within one year of the discharge of the common liability.[8]

Thus in the context of this case subrogation refers to the method by which Progressive acquired a right to assert Hawkins' claim for contribution against Gadoury. But it has nothing to do with whether Hawkins indeed has a valid claim or whether that claim has been timely asserted. To put it simply, through subrogation Progressive stands in Hawkins' shoes and takes whatever

rights she may have vis-à-vis Gadoury, but no more and no less. *Accord* 73 Am.Jur.2d *Subrogation,* § 129 at 681–82; Jane M. Draper, Annotation, *When Does Statute of Limitations Begin To Run Upon An Action by Subrogated Insurer Against Third–Party Tortfeasor,* 91 A.L.R.3d 844, 848 (1979) (suggesting that the limitations period for the underlying tort action is no bar to a legitimate indemnity or contribution action).

Therefore, we hold that an insurer subrogated to a contribution or indemnity action of its insured who files suit on that cause of action against an alleged cotortfeasor must do so within the limitations period applicable to that contribution or indemnity claim and is not limited for that purpose by any limitations period applicable to the underlying tort action.

## B

On appeal Gadoury apparently has abandoned his initial theory based on the distinction, or lack thereof, between subrogation and contribution claims. In his brief to this Court, Gadoury argues that Hawkins "is barred from pursuing a contribution action * * * because she settled the case and obtained a release denying all liability."[9] Gadoury cites to no persuasive authority for his proposition that an early settlement by one alleged joint tortfeasor forecloses all right he or she may have to contribution or indemnity, and we have discovered none. To the contrary, § 10–6–5 of the UCAJTA specifically addresses settlements concluded before a contribution action is brought:

> "**Separate settlement with injured person.**—A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement."

8. Under similar reasoning, an indemnity claim brought by Progressive in its capacity as Hawkins' subrogee would be subject to the ten-year limitations period applicable to indemnity claims.

9. Gadoury now concedes that if Pelletier's original tort action had resulted in a judgment against Hawkins, then "Hawkins and Progressive would still have one additional year from that point to pursue a contribution action against Gadoury."

As noted above, the release executed by Pelletier expressly extinguished all potential liability of Gadoury to the injured person (Pelletier) as well as letting Hawkins and Progressive off the liability hook. Thus, § 10–6–5 is satisfied. It would defy logic to say that the drafters of the act would have included such a provision had they intended, as Gadoury argues, to extend the right of contribution only to those tortfeasors whose liability has been finally adjudicated after a trial. Such a construction runs counter to the plain meaning of the statute and to its apparent legislative intent. Furthermore, such a reading would deter the settlement of tort claims and would in effect mandate litigation to its often bitter and costly end. However, as we have repeatedly noted, the early settlement of disputes is one of the prime policy objectives pursued by our Legislature in policing these legal precincts. *See, e.g., Merrill,* 706 A.2d at 1311.

The official comment to § 1(d) of the 1955 revision of the Uniform Act, which restates § 10–6–5 largely verbatim, accords completely with our construction of Rhode Island's UCAJTA:

> "The policy of the Act is to encourage rather than discourage settlements. The tortfeasor who settles removes himself entirely from the case so far as contribution is concerned if he is able and chooses to buy his peace for less than the entire liability. If he discharges the entire obligation it is only fair to give him contribution from those whose liability he has discharged." Uniform Act, 12 U.L.A. 194, 196 § 1 cmt. (d) (1955 revision) (1996).

Although Rhode Island has not adopted this particular revision, the official comment makes clear that no significant change from the 1939 act was intended. *See id.* ("[t]his is the same as Section 2(3) of the 1939 Uniform Act").

*Scherza v. Home Indemnity Co.,* 257 F.Supp. 97 (D.R.I.1966), the sole authority cited by Gadoury in support of his contention, is not to the contrary. There a Federal District Court refused to allow the defendant in a negligence action to file a counterclaim for contribution in circumstances in which the liability that formed the basis for contri-

bution had not yet been established—either by settlement or by judgment. Accordingly the court considered the asserted counterclaim merely contingent and premature. *Id.* at 99. Nowhere in that opinion, however, does that court suggest that the only way for contribution liability to be established is by judgment and not by settlement. Accordingly we hold that Gadoury's argument on appeal lacks merit.

### Conclusion

For the reasons set forth above Hawkins' appeal is sustained, the judgment of the Superior Court is vacated, and the case is remanded for further proceedings consistent with this opinion.