Robert BOLTON

v.

QUINCY MUTUAL FIRE INSURANCE COMPANY.

No. 98–399–M.P.

Supreme Court of Rhode Island.

June 17, 1999.

Aram R. Schefrin, Providence, for Plaintiff.

John F. Kelleher, Amy C. Vignali, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court by way of plaintiff, Robert Bolton's (Bolton) petition for writ of certiorari seeking review of the decision by a justice of the Superior Court granting the defendant's, Quincy Mutual Fire Insurance Company's (Quincy), motion to sever one count from a two-count breach of contract claim alleging insurer bad faith. The trial justice granted Quincy's motion to sever and we granted certiorari to review the propriety of the severance.

The parties were directed to appear and show cause why the issues raised in this petition should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the merits of this petition at this time.

The facts presented by the parties to this dispute are claimed as follows. On June 21, 1996, Bolton was injured while exiting from an automobile operated by Peter Whitecross (Whitecross). The injury occurred when Whitecross closed a window on Bolton's hand, trapping his fingers between the window and door frame. As a result, Bolton suffered the loss of his finger tip.

At the time of the injury, Whitecross was insured by Northland Insurance Company (Northland) with a policy limit of $25,000. On December 2, 1997, Northland offered the policy limit to Bolton in settlement of the claim. Also, Bolton held an uninsured/underinsured motorist policy with Quincy and requested permission to accept Northland's offer which would have triggered Bolton's underinsured policy issued by Quincy. Bolton alleges that Quincy initially deferred granting permission to settle because a subrogation claim by Quincy against Whitecross would have been destroyed by a release from Bolton to Whitecross. Bolton also maintains that Quincy failed to provide him with a definitive response, and that on March 19, 1998, Bolton notified Quincy of his intention to file suit for breach of contract and bad faith.

On April 15, 1998, Bolton filed suit in Superior Court, asserting a claim for underinsured motorist benefits which included an allegation of insurer bad faith against Quincy for failing to grant permission to settle with Whitecross for his policy limit and for refusing to respond to his request to settle.

In reliance upon *Bartlett v. John Hancock Mutual Life Insurance Co.*, 538 A.2d 997, 1002 (R.I.1988), and presumably pursuant to Rule 42 of the Superior Court Rules of Civil Procedure, Quincy moved to sever the two counts in order to limit discovery concerning the breach of contract claim to non-privileged materials, and avoid litigating a bad-faith claim that depended upon the successful prosecution of the count alleging breach of contract. The motion to sever was granted by the hearing justice and we subsequently granted certiorari on December 21, 1998.[1] We were concerned whether the insurer's alleged refusal to respond to a settlement request constituted bad faith as a matter of law. Moreover, we conclude that Quincy's refusal to permit discovery into the reasoning underlying its refusal to settle might have created an undue hardship for Bolton in attempting to overcome a Super R. Civ. P. 50 motion for judgment as a matter of law (notwithstanding the possibility of a good faith explanation by insurer for refusing to settle).

■ At oral argument, Quincy stated that it did in fact respond to Bolton on March 30, 1998, albeit three months after the initial request, and only subsequent to receiving a letter from Bolton's lawyer in which he threatened to file suit within two weeks unless a response was received. The receipt by Bolton of such a communication from Quincy is a question of fact for the jury. However, the mere fact that Quincy may have responded to Bolton on March 30, 1998, indicating that it had conducted an asset check of Whitecross, and uncovered the existence of some "assets upon which there may be potential recovery," does not end the inquiry and is an insufficient reason for the denial of discovery on this crucial point, which we conclude is not privileged information.

■ When an insurance company denies its insured permission to settle within a

---

1. The Court was informed at oral argument that the parties have elected to proceed to arbitration. However, we have not been informed that the matter is resolved.

tortfeasor's policy limit, it exposes itself to an action in bad faith for breach of its obligations to its insured in situations where there is no objective and reasonable basis for its refusal. *See generally Bibeault v. Hanover Insurance Co.*, 417 A.2d 313, 319 (R.I.1980) (citing *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376–77 (1978)). The statutory equivalent of *Bibeault*, codified in G.L.1956 § 9–1–33, was designed to "redress the imbalance in bargaining power between an assured and the insurer * * * which may lead the insurer to stonewall * * * in order to reduce or totally eliminate its just liability." *Pace v. Insurance Company of North America*, 838 F.2d 572, 578–79 (1st Cir.1988).

This Court has previously determined that an insurance company has a "fiduciary obligation to act in the 'best interests of its insured'" and to "'refrain from acts that demonstrate greater concern for the insurer's monetary interest than the financial risk attendant to the insured's situation.'" *Asermely v. Allstate Insurance Co.*, 728 A.2d 461, 464 (R.I. 1999); *see Medical Malpractice Joint Underwriting Association of Rhode Island v. Rhode Island Insurer's Insolvency Fund*, 703 A.2d 1097, 1102 (R.I.1997). Accordingly, we conclude that "[a]n insurance company's fiduciary obligations include a duty to consider seriously a plaintiff's reasonable offer to settle within the policy limits." *Asermely*, 728 A.2d at 464.

The reason for Quincy's refusal to approve Bolton's settlement request, including the efforts it expended to check Whitecross's assets and the actual results of that check, are critical to the question of whether there existed a reasonable and objective basis for Quincy to deny Bolton's settlement request and his request for uninsured/underinsured motorist benefits. *See Bibeault*, 417 A.2d at 319. Merely uncovering information that a tortfeasor owns real estate is not sufficient grounds for refusing permission to settle for the policy limits. We conclude that the insur-

er has a duty to establish that these assets are realistically reachable in a subrogation action. Accordingly, although we uphold the severance order issued by the hearing justice, we modify it to permit Bolton to propound interrogatories to Quincy, requiring it to set forth under oath the extent of its investigation into Whitecross's assets and the results of that asset check. The answers to these interrogatories can serve as a basis for a later determination of whether the carrier was acting in good faith in refusing to allow Bolton to settle and they may also be relevant to the breach of contract claim.

For the reasons stated herein, the plaintiff's petition for certiorari is granted. The judgment of the Superior Court is quashed. The plaintiff may seek limited discovery as set forth in this opinion, and the papers of the case are remanded to the Superior Court with our decision endorsed thereon.