**TRAVELERS INSURANCE COMPANY**

v.

**Donald HINDLE, Jr., d/b/a Recyclers of Rhode Island.**

No. 99–484–M.P.

Supreme Court of Rhode Island.

March 29, 2000.

Bennett R. Gallo, Coventry, Mark C. Hadden, Robert Corrente, Providence, for Plaintiff.

Kelly M. Fracassa, George A. Comolli, Westerly, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This matter comes before us on the defendant's petition for certiorari to review the granting of a miscellaneous petition by a Superior Court trial justice in favor of Travelers Insurance Company (Travelers) permitting discovery of the assets of the defendant, Donald Hindle, Jr. (Hindle), the former owner of Recyclers of Rhode Island (Recyclers), in a personal injury suit commenced by Travelers's insured, Peter Parente and his family (collectively the

Parentes) against Hindle and his codefendant Kenneth Pope (Pope), an employee of Recyclers. Hindle asserts that the trial justice abused his discretion by granting the miscellaneous petition for discovery of his financial assets because such discovery was merely designed to determine whether he, as a defendant, could satisfy any potential judgment that might be rendered in favor of the Parentes above and beyond the limits of his liability insurance policy, and therefore had no relevance to his liability for the Parentes' claimed damages. For the reasons set forth in detail below, we are of the opinion that the trial justice abused his discretion by granting Travelers's miscellaneous petition, and consequently we grant the defendant's petition for certiorari and quash the order for discovery entered pursuant to the miscellaneous petition.

I

## Facts and Travel

On May 26, 1994, Peter Parente, while driving on Route 95 in Providence, was struck and seriously injured by a vehicle operated by Pope and owned by Recyclers. The instant personal injury action was instituted in the Kent County Superior Court against Pope and against Hindle as the owner of Recyclers, under a theory of *respondeat superior*. The Parentes also filed a claim for uninsured/underinsured motorist (UM/UIM) benefits against a policy issued by Travelers to Peter Parente's employer, American Standard, Inc. (American). Prior to trial, Hindle's insurance carrier, Scottsdale Insurance, offered to settle with the Parentes for approximately $300,000, representing the limits of Hindle's liability insurance policy. Pursuant to the UM/UIM clause in the Travelers's policy, the Parentes requested permission from Travelers to settle with Hindle for his policy limits. After conducting private asset discovery concerning Hindle's assets,

Travelers filed both a motion to intervene in the pending case and a miscellaneous petition to conduct asset discovery pursuant to G.L.1956 § 9–18–12. Travelers also requested that the impending trial be stayed for ninety days while it conducted such discovery. Travelers asserted in its motions that court-ordered discovery was necessary for it to determine the extent of Hindle's assets, on the theory that those existing assets should be used to offset the Parentes' claim filed against Travelers pursuant to the UM/UIM clause in the Travelers's policy issued to American.

After a hearing on the motions, the trial justice granted Travelers's miscellaneous petition, ordered Hindle, a resident of Florida, to appear to be deposed by Travelers and authorized Travelers "to proceed with any other discovery device to determine the assets of the defendant Hindle including but not limited to the issuance of document requests and subpoenas."[1] Hindle responded to this far-reaching discovery order by moving for a protective order against the taking of his deposition, as well as moving to stay the asset discovery portion of the order. Both motions were denied by the trial justice. Hindle subsequently petitioned this Court for its writ of certiorari. Our writ issued, and all proceedings in the Superior Court were stayed pending our review of the petition.

II

## The Miscellaneous Petition

■ Hindle asserts that the trial justice's decision to grant Travelers's miscellaneous petition pertaining to discovery of his assets constituted an abuse of discretion because such information would be prejudicial, immaterial, and irrelevant to the trial jury's determination of his liability to the Parentes in tort and therefore not appropriately discoverable. Travelers, on the other hand, asserts that consent

---

1. The trial justice did not rule on the motion to intervene, and therefore Travelers is not a party in the suit between the Parentes and Hindle, although as will be noted later, it purported to act as if it had somehow actually become a party in the case.

granted to the Parentes to settle with Hindle could release Hindle from any and all future claims, leaving Travelers liable to the Parentes for damages exceeding the approximately $300,000 offered by Hindle, with no recourse of subrogation against Hindle for that corresponding offset. Faced with the potential for such exposure, Travelers claims that its request for discovery of Hindle's assets was reasonable in order to appropriately respond to the Parentes' request to settle. Travelers argues that such court-ordered discovery was necessary to satisfy its obligation as an insurer under *Bolton v. Quincy Mutual Fire Insurance Co.*, 730 A.2d 1079 (R.I. 1999) (per curiam), in which we held that "[a]n insurance company's fiduciary obligations include a duty to consider seriously a plaintiff's reasonable offer to settle within the policy limits." *Id.* at 1081 (quoting *Asermely v. Allstate Insurance Co.*, 728 A.2d 461, 464 (R.I.1999)). We also recognized in *Bolton* that an insurer's duty extended to the determination that a tortfeasor's assets were "realistically reachable in a subrogation action." *Id.*

■ We have consistently held that "[i]n granting or denying discovery motions, a Superior Court justice has broad discretion." *Colvin v. Lekas*, 731 A.2d 718, 720 (R.I.1999). "Moreover, this Court will not disturb a decision by a Superior Court justice relating to discovery save for an abuse of that discretion." *Id.* (citing *Corvese v. Medco Containment Services, Inc.*, 687 A.2d 880, 881–82 (R.I.1997)).

■ We preface our analysis of the case at bar by noting that Travelers, as the Parentes' insurer, enjoys no greater right to discovery against Hindle than do the Parentes themselves. Rather, as a potential subrogee, Travelers metaphorically steps into the shoes of the Parentes and is entitled to the same rights that they enjoy vis a vis Hindle, "but no more and no less." *Hawkins v. Gadoury*, 713 A.2d 799, 805 (R.I.1998). *See also* 73 Am.Jur.2d *Subrogation* § 106 (1974) ("The rights to which the subrogee succeeds are the same as, but

not greater than, those of the person for whom he is substituted."). With Travelers's status being thus defined, we next turn to the issue of when discovery of a defendant's financial assets is permitted, when such information is not a subject of the pending litigation and when such information is not reasonably calculated to lead to the discovery of admissible evidence in the pending litigation.

This Court has always been cognizant of "the prejudicial nature of requiring a defendant to reveal his or her financial worth" in the context of discovery. *Palmisano v. Toth*, 624 A.2d 314, 319 (R.I. 1993). We believe that our admonitions in *Palmisano* concerning the necessary balancing between legitimate discovery rights towards issues to be litigated at trial and the well-settled privacy rights surrounding a defendant's financial assets are in accord with other jurisdictions:

> "Ordinarily, the federal discovery rules and similar state rules do not permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment, since such matters are not relevant to the trial issues and cannot lead to the discovery of admissible evidence[.]" 23 Am.Jur.2d *Depositions and Discovery* § 40 (1983).

*See, e.g., Signal Capital Corp. v. Frank*, 164 F.R.D. 7, 10 (S.D.N.Y.1995) ("discovery concerning an opposing party's assets is not ordinarily permitted, unless such discovery is relevant to the merits of the pending claim, or in response to a defense"); *Grant v. Huff*, 122 Ga.App. 783, 178 S.E.2d 734, 735 (1970) (sustaining trial justice's denial of discovery order relating to the defendant's ability to pay a possible judgment because "[t]he information sought * * * does not appear to be reasonably calculated to lead to the discovery of admissible evidence"); *Sawyer v. Boufford*, 113 N.H. 627, 312 A.2d 693, 694 (1973) (motion for discovery was an unwarranted invasion of the defendant's privacy, and therefore reversible error "which [compelled] the defendant to reveal his

financial worth prior to an adjudication of his liability in a tort action in which his resources are not, and cannot be, an issue in the litigation"); *Great American Insurance Co. v. Murray,* 437 S.W.2d 264, 266 (Tex.1969) ("One's ability to satisfy a judgment ordinarily is not evidence that is material to any matter involved in or arising out of a tort action * * *.").

Based on the foregoing analysis, we conclude that discovery of a defendant's financial assets in a pending action that seeks only compensatory damages is prohibited when, as in the case at bar, the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence and when such requested information is not a subject of the pending litigation. Because such an obvious result might seem at first blush too harsh, we observe that "an imaginative plaintiff is not helpless" and that private discovery methods are readily available such that a plaintiff may secure information concerning a defendant's financial assets without the need to resort to court-ordered discovery. *Sawyer,* 312 A.2d at 695.

Further, we are of the opinion that an insurer's fiduciary obligations under *Bolton* do not require court-ordered discovery of a defendant's assets and that *Bolton* should not be interpreted as expanding the traditional well-settled boundaries of discovery into areas not "relevant to the subject matter involved in the pending action." Super.R.Civ.P. 26(b)(1). Rather, we interpret *Bolton* to mean that an insurer's duty to its insured to seriously consider an offer by a tortfeasor to settle is deemed satisfied when that insurer has conducted a reasonable inquiry into the assets of a defendant to the extent permissible by means of private asset discovery, and if the insurer then chooses to deny permission for its insured to settle based on the fruits of that inquiry, that the decision should be supported by a reasonable and objective basis. *Bolton,* 730 A.2d at 1080–81. The reasonableness standard articulated in *Asermely* and its

progeny, *Bolton,* is necessarily flexible, and we are reluctant to give it rigid judicial shape. However, we do believe that an insurer that conducts private asset discovery of a defendant's assets as routinely conducted by other similarly situated insurers in the industry would presumably, in the absence of any fraud or deceit, be deemed to have acted reasonably. If that be the case, the insurer's efforts would presumably not be found wanting in a Rhode Island court in a claim for bad faith made against it. Nothing in the above standard suggests however, that in responding to an insured's request for consent to settle pending litigation between the insured and a tortfeasor that the insurer has the right to interrupt the course of that pending litigation in order to compile a complete inventory or accounting of a defendant's assets before any adjudication of liability. Because we have never, nor do we now, require court-ordered discovery for an insurer to determine a defendant's ability to pay a future judgment, we believe that an insurer would not be found to have acted in bad faith simply because of its failing to resort to court-process-discovery. Thus, we conclude that Travelers is not entitled to discovery of Hindle's assets in this action.

We next turn to the propriety of Travelers's use of § 9–18–12 for discovery matters beyond the perpetuation of testimony that may be the subject of litigation. Travelers, not surprisingly, asserts that there was no abuse of discretion on the part of the trial justice in granting its discovery request pursuant to § 9–18–12. Travelers, in its miscellaneous petition for asset discovery, had requested permission to:

"conduct discovery under R.I.G.L. 9–18–12 and under principles of equity concerning the assets of the defendant, including the deposition of the defendant and the issuance of subpoenas relating to any assets disclosed by the defendant, so that Travelers may determine whether the defendant has assets above and

beyond the insurance policy in this case."

We now proceed to compare Travelers's request for asset discovery pursuant to § 9–18–12 with the language of the statute itself. Section 9–18–12 provides in pertinent part:

"Any person, desirous of perpetuating the testimony of any witness concerning any matter which is or may be the subject of litigation, as well before as after litigation is commenced, may present a petition in writing to any justice of the supreme or superior or family court, or to any justice of a district court, setting forth the reasons of his or her application, the name of the witness or witnesses, the subject matter of the controversy, and the names of all persons known to be interested therein, and praying that the deposition of the witness or witnesses may be taken; and thereupon if the justice be satisfied of the reasonableness of the petition, he or she shall designate some notary public or standing master in chancery to take the deposition, to whom the petition, with the order of designation thereon, shall be sent."

Suffice it to say that the plain language of § 9–18–12 allows for the perpetuation of testimony of witnesses "concerning any matter which is or may be the subject of litigation," upon a trial justice's determination concerning the reasonableness of such a petition. We discern nothing in the statute that permits discovery in any way beyond such testimonial parameters or operates as a substitute for discovery. Accordingly, we decline Travelers's invitation to read such discovery language into the statute in the instant litigation.[2] Therefore we readily conclude that the trial justice abused his discretion by granting a seemingly unfettered fishing license to Travelers to conduct such asset discovery, pursuant to § 9–18–12.

We finally note from the record before us that Travelers's motion to depose Hindle, scheduled pursuant to Rule 30 of the Superior Court Rules of Civil Procedure, is also error. Rule 30 allows for the taking of depositions only by a "party." As Travelers itself on appeal admits, it is not a party to the pending action, and we thus conclude that Travelers is precluded from attempting to schedule and conduct depositions pursuant to Rule 30.[3]

For the foregoing reasons, we grant the petition for certiorari, quash the order for discovery entered pursuant to the miscellaneous petition by the Superior Court and remand the papers in this case to that court with our decision endorsed thereon.

---

2. Raising the issue for the first time on appeal, and contrary to its stated rationale in the miscellaneous petition, Travelers now claims that G.L.1956 § 9–18–12 also serves as the appropriate tool to counter allegedly fraudulent conveyances made by Hindle. In the absence of any record facts on the issue and in light of our holding concerning the scope of § 9–18–12, we need not address this contention.

3. We further note that Travelers's notice, on its face, scheduled the deposition of Hindle to be taken in Providence, although Hindle now resides in Florida. We have held that requiring a nonresident defendant to be deposed in Rhode Island is in contravention of well-settled caselaw, both state and federal, and in such situations, a protective order by the potential deponent will usually be granted. *Ciunci, Inc. v. Logan*, 652 A.2d 961, 962 (R.I. 1995).