MORRIS, Judge.
2245 Venetian Court Building 4, Inc., and San Marino Properties, LLC, (Venetian) appeal a postjudgment discovery order requiring them to produce various financial and organizational documents. We hold that the requested documents were relevant in the context of the post-judgment proceedings and that the trial court did not err in requiring their production. We therefore affirm.
In 2012, William and Margaret Harrison, as trustees of the Margaret Harrison-Living Trust, obtained a default judgment [1] against two individuals: Arthur Bateman and Daniel Martin. After unsuccessfully attempting to recover on their judgment against Bateman, the Harrisons issued subpoenas duces tecum to Venetian in aid of execution of their judgment. These subpoenas were based on the Harri-sons’ review of various public records which reflected that:
• Bateman was a registered agent or president of various Venetian-related corporations and partnerships between 2004 and 2018;.
• Bateman also executed the mortgage for a property owned by one of the Venetian corporations, and as of 2012, he was still listed on property tax records as the owner of that same property;
• A separate entity, San Marino Properties, LLC, was created in 2010, and that entity shared a managing member, Mr. Dana Bessette, with other Venetian-related corporations (in 2012, Bessette Ust-ed himself as president of 2245 Venetian Court Building 4, Inc.);
• In 2012, Mr. Bessette provided the same mailing address for both 2245 Venetian Court Building 4, Inc., and San Marino Properties, LLC.
Venetian objected to the subpoenas and filed motions to quash. The Harrisons filed a memorandum in opposition to the motions to quash and attached the public records they relied on in serving their subpoenas. Ultimately, the trial court denied Venetian’s motions.
I. Relevance
We review the trial court’s order for abuse of discretion. See Friedman v. Heart Inst. of Port St. Lucie, Inc., 863 So.2d 189,194 (Fla.2003).
Venetian first argues that the requested documents are not relevant as Venetian was a nonparty to the proceedings underlying the deficiency judgment and the subpoenas do not limit the requests for documents to items relating solely to Bate-man, the judgment debtor. Venetian also points out that the requests are not related to any claim for malfeasance.
*1179 Relevance is indeed the “polestar” in a discovery request. See McDonald’s Rests. of Fla., Inc. v. Doe, 87 So.3d 791, 793 (Fla. 2d DCA 2012). However, this court has repeatedly noted the distinction between prejudgment and post-judgment discovery. In the prejudgment context, “a party is entitled only to the opponent’s financial records that pertain to the pending action.” Regions Bank v. MDG Frank Helmerich, LLC, 118 So.3d 968, 969 (Fla. 2d DCA 2013). “But in postjudgment discovery, the dispute in the original civil action has been resolved [and, therefore] [t]he matters relevant for discovery [are those] that will enable the judgment creditor to collect the debt.” Id.; see also Gen. Elec. Capital Corp. v. Nunziata, 124 So.3d 940, 943 (Fla. 2d DCA 2013) (“In the context of postjudgment discovery, matters relevant to the subject matter of the pending action or which would lead to the discovery of admissible evidence, per [Florida] Rule [of Civil Procedure] 1.280(b)(1), would encompass matters identifying or leading to the discovery of assets available for execution .... ” (alteration in original) (internal quotation omitted)). This means that in a post-judgment discovery context, “the creditor has the right to discover any assets the debtor might have that could be subject to levy or execution to satisfy the judgment, or assets that the debtor might have recently transferred.” MDG Frank Helme-rich, LLC, 118 So.3d at 970 (emphasis added).
Venetian argues that the broad postjudgment discovery rule does not apply here and that the Harrisons are merely on a “fishing expedition.” But while we agree that generally “discovery in aid of execution cannot be used to pry into the assets and business of persons other than the judgment debtor,” we have also held that a nonparty may be subject to post-judgment discovery where the “judgment creditor can provide a good reason and close link between the unrelated entity and the judgment debtor.” Gen. Elec. Capital Corp., 124 So.3d at 942.
In General Electric Capital Corp., we granted certiorari and quashed an order permitting discovery against a nonparty. Id. at 943. Our decision was based on the facts that no judgment had been entered against the nonparty, the relationship between the nonparty and the judgment debtor had been remote even when in existence, and there was no relationship between the nonparty and the judgment debtor at the time of the discovery request. Id. at 942. Thus we concluded that the judgment creditor had “not laid the proper predicate” for the discovery requests. Id. at 943.
Here, we conclude that the Harri-sons have established more than just a remote link between Bateman and Venetian. The public records relied upon by the Harrisons revealed that subsequent to Bateman’s default, Venetian engaged in at least one name change and the appointment of new corporate officers to one of the Venetian entities. The records also revealed that Mr. Bessette was affiliated with at least three Venetian entities and that he provided the same mailing address for both 2245 Venetian Court Building 4, Inc., and San Marino Properties, LLC. Although the link between Bateman and San Marino Properties, LLC, is not as strong as the link between Bateman and the other Venetian entities, judgment creditors are allowed “broad discovery into [a] debtor’s finances ... even if the discovery concerns property jointly owned with others,” particularly where “there are indications that the debtor might have individual assets or might have recently transferred assets that would otherwise be available for levy.” Jim Appley’s Tru- *1180 Arc, Inc. v. Liquid Extraction Sys. Ltd. P’ship, 526 So.2d 177, 179 (Fla. 2d DCA 1988).
Venetian points out that the Harrisons did not bring a separate claim for fraudulent transfer, but we do not think that fact is dispositive. As we noted in General Electric Capital Corp., the requesting party must establish the proper predicate for purposes of serving discovery on a nonparty. 124 So.3d at 943. However, we did not go so far as to require a claim for malfeasance against the nonjudgment debtor in the pleadings. Rather, we determined that the requesting party must only provide a “good reason and close link” between the nonparty and judgment debt- or. Id. at 942. We reject Venetian’s attempts to apply prejudgment discovery case law to this issue, and we conclude that the Harrisons established a “good reason and close link” between Bateman and Venetian, thereby entitling them to discovery of the requested documents.[2] However, this does not end our analysis because Venetian raises alternative arguments relating to a constitutional right to privacy and the lack of an evidentiary hearing that we must address.
II. Constitutional Right to Privacy
Venetian contends that Article I, section 23 of the Florida Constitution provides a right of privacy that applies to financial records in the absence of a relevant and compelling reason to compel disclosure. Venetian also contends that it may assert this right on behalf of its shareholders, officers, and directors.
We note that ordinarily, corporations cannot raise the privacy rights of third parties unless they (the corporations) meet the third-party standing test enunciated in Alterra Healthcare Corp. v. Estate of Shelley, 827 So.2d 936 (Fla.2002). However, even in the absence of third-party standing, where a corporation objects to a discovery request on the basis of relevancy, a “trial court can consider the constitutional rights of third parties who would be substantially affected by the outcome of the litigation.” Id. at 945.
*1181 There is no issue of third-party standing here. Rather, the issue is one of relevancy. Clearly, the documents requested were relevant to the Harrisons’ attempt to discover any assets that Bateman had or that he had recently transferred in aid of execution of their judgment against him, especially where the Harrisons proffered a “good reason and close link” between Bateman and Venetian. Gen. Elec. Capital Corp., 124 So.3d at 942. The case law on which Venetian relies is factually distinguishable.[3] Thus we conclude that the discovery request here was not barred by any privacy interest of Venetian’s shareholders, officers, and directors.
III. Lack of an Evidentiary Hearing
Lastly, Venetian argues that the Harrisons were required to prove the relevancy of the requested documents at an evidentiary hearing. Venetian asserts that the trial court erred by relying on the Harrisons’ counsel’s unsworn statements and the documents they provided relating to Bateman’s link to Venetian.
We acknowledge that this court, as well as other Florida courts, have suggested that evidentiary hearings are necessary to determine the relevancy issue. See, e.g., Rowe v. Rodriguez-Schmidt, 89 So.3d 1101,1103-04 (Fla. 2d DCA 2012); Spry v. Prof'l Emp’r Plans, 985 So.2d 1187, 1188-89 (Fla. 1st DCA 2008). However, those cases involved the personal right to privacy which, as we have already explained, is not what is at issue here. Further, where relevancy is readily apparent — as it is in this case — at least one Florida court holds that an evidentiary hearing is not necessary. See Elsner v. E-Commerce Coffee Club, 126 So.3d 1261, 1264 (Fla. 4th DCA 2013) (rejecting the argument that “a trial court must always conduct an evidentiary hearing before it may order financial discovery from a party” and holding that where the requested financial information was relevant to the issues as framed by the pleadings, trial court did not depart from the essential requirements of the law in ordering disclosure).[4] We therefore hold that under the facts of this ease, the trial court’s failure to conduct an evidentia-ry hearing prior to ordering the disclosure of the requested documents does not constitute reversible error.
IV. Conclusion
Because the relevancy of the requested documents to the Harrisons’ attempt to *1182 execute on their judgment is readily apparent, the trial court did not err in overruling Venetian’s objections and requiring the disclosure of the documents. We therefore affirm.
LaROSE and KHOUZAM, JJ., Concur.

. The judgment was based on a promissory-note on which Arthur Bateman defaulted in 2008.

. At least one federal case is instructive on the issue of what can constitute a close link between a nonparty and a judgment debtor. In Trustees of the North Florida Operating Engineers Health & Welfare Fund v. Lane Crane Service, Inc., 148 F.R.D. 662 (M.D.Fla.1993), the court held that the judgment creditor was entitled, pursuant to. Federal Rule of Civil Procedure 69(a), to seek discovery from a nonparty on the basis of an alter ego theory. The court relied on the following facts: (1) the judgment debtor became defunct within one month of the formation of the new company; (2) the son of the principal of the debtor company was the sole owner of the new company; (3) the debtor company and the new company utilized the same address; (4) the debtor company and the new company engaged in the same kind of business; and (5) the new company employed some of the debt- or company’s former employees. Id. at 664. The court held that while any one of those factors, standing alone, might not be sufficient to make the requisite showing, the combination of those factors provided a basis for the creditor’s allegation of an alter ego relationship sufficient to justify the requested discovery. Id. In so holding, the court opined that creditors "can hardly be expected to make the prima facie showing required to implead [the nonparties in supplementary proceedings] before having access to discovery which would allow them to determine if such a showing can be made." Id.
Here it is the combination of factors that leads us to conclude that a "close link” has been established: timing of the corporate name change and appointment of new officers shortly following Bateman’s default, the fact that the two Venetian entities involved in this appeal share the same address, the fact that the Venetian entities share corporate officers, and the fact that Bateman was still involved either as an owner or officer with several of the Venetian entities even after the judgment was obtained.

. Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A. v. Mullin, 602 So.2d 955 (Fla. 3d DCA 1991), Bradstreet v. Taraschi, 529 So.2d 809, 810 (Fla. 5th DCA 1988), and Palmer v. Servís, 393 So.2d 653 (Fla. 5th DCA 1981), are prejudgment discovery cases which require more narrowly tailored discovery requests and which do not involve the same considerations as postjudgment discovery cases (i.e., enabling the judgment creditor to locate assets in aid of execution of judgment). S.W. Fla. Paradise Prop., Inc. v. Segelke, 111 So.3d 268, 270 (Fla. 2d DCA 2013), was a postjudgment discovery case, but it involved a judgment against a corporation and a request for the corporation’s president and registered agent to produce his personal financial, business and property records, along with records which disclosed the “extent and nature of financial interest, property!)] and property rights” owned by him both individually and jointly; see also Walter v. Page, 638 So.2d 1030 (Fla. 2d DCA 1994) (similar). That is different from the instant case because Article I, section 23 clearly affords a right of privacy to natural persons. See Rowe v. Rodriguez-Schmidt, 89 So.3d 1101, 1103 (Fla. 2d DCA 2012).

. The fact that Eisner involved a request for personal financial documents and was a prejudgment discovery case does not make its holding any less applicable on this particular issue. In fact, given that postjudgment discovery is broader in nature and that corporations cannot ordinarily assert a privacy right, Eisner’s holding makes even more sense in a case such as this one where a judgment creditor is seeking information from a nonparty who has a close link to the judgment debtor.