IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JEFF YAUCK, an individual; and CODY ALT, an individual, *Petitioners*,

*v.*

WEST TOWN BANK & TRUST, an Illinois chartered bank, *Respondent*.

No. 1 CA-SA 24-0268

FILED 03-20-2025

Petition for Special Action from the Superior Court in Maricopa County
No. CV2024-013134
The Honorable Dewain D. Fox, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Gallagher & Kennedy, P.A. Phoenix
By Dale C. Schian, Christopher W. Thompson
*Counsel for Petitioners*

Provident Law, Scottsdale
By Timothy J. Watson, Aaron Lumpkin
*Counsel for Respondent*

**OPINION**

Judge Daniel J. Kiley delivered the opinion of the Court, in which Presiding
Judge Michael J. Brown and Judge D. Steven Williams joined.

**K I L E Y**, Judge:

¶1          Petitioners Jeff Yauck and Cody Alt seek special action relief from orders granting an application for provisional remedies filed by Respondent West Town Bank & Trust ("West Town") and allowing West Town to conduct prejudgment discovery into Petitioners' financial condition. For the reasons that follow, we accept jurisdiction and grant relief.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2          Petitioners are the founders of, and former majority shareholders in, PureKana, LLC, ("PureKana"), which was in the business of selling "hemp-based cannabidiol-related products."

¶3          In 2020, West Town lent PureKana $10,000,000 pursuant to an agreement (the "Loan Agreement") that required full repayment after five years, with periodic payments in the interim. Under the Loan Agreement, the outstanding balance would be due upon an uncured "event of default," including, as relevant here, PureKana's filing of a bankruptcy petition. West Town and PureKana also entered into several ancillary agreements, including a security agreement (the "Security Agreement") that gave West Town a security interest in PureKana's inventory, equipment, and other tangible and intangible property.

¶4          When PureKana entered the Loan Agreement, Petitioners simultaneously executed separate guaranty agreements (the "Guaranty Agreements") in which they guaranteed full payment to West Town of amounts due under the Loan Agreement.

¶5          In May 2024, West Town sued Petitioners, alleging that PureKana defaulted under the Loan Agreement by filing a bankruptcy petition. West Town sought to recover from all sums due under the Loan Agreement, which amounts to principal and accrued interest of $10,250,391.10 along with attorney fees, costs, and other accruing charges.

¶6          West Town also filed an Application for Prejudgment Remedies of Attachment and Garnishment With Notice and Motion for Order Permitting Prejudgment Discovery of Assets in Aid of Enforcement of Provisional Remedies (the "Application") seeking the provisional remedies of attachment under A.R.S. § 12-1521(1) and prejudgment garnishment under A.R.S. § 12-1570(5).

**¶7**          In support of the requested attachment, the Application stated that Petitioners are liable for PureKana's obligations under the Guaranty Agreements. Without referencing West Town's security interest in PureKana's tangible and intangible property, the Application alleged that Petitioners' obligation under the Guaranty Agreements and Loan Agreement is "unsecured," thereby justifying attachment under A.R.S. § 12-1521(1).

**¶8**          In support of the requested prejudgment garnishment, the Application cited A.R.S. § 12-1570(4), which defines "judgment creditor" to include a defendant against whom an order granting a provisional remedy has been entered. The Application did not, however, include the information required to be included in an application for prejudgment garnishment. *See* A.R.S. § 12-1572(2). The Application did not, for example, identify a garnishee, nor did it set forth "good reason to believe" that a garnishee "has in [its] possession nonexempt personal property belonging to the judgment debtor." A.R.S. § 12-1572(2)(c).

**¶9**          In its Application, West Town requested leave to conduct discovery into Petitioners' assets. Acknowledging "the normal rule prohibiting the taking of discovery of a party's assets before judgment is entered," West Town argued that an exception was warranted in this case. According to West Town, obtaining discovery of Petitioners' financial condition before judgment would help it determine whether litigating its claims on the merits would be cost-effective. "[I]t is possible that the plaintiff may never prevail in its case," West Town explained, and so "it makes no sense to waste the time and resources of the parties and their counsel dealing with issues about assets to enforce the plaintiff's judgment until after there has been an entry of judgment against the defendant [*sic*]."

**¶10**         Neither the Complaint nor the Application were supported by an affidavit. Nonetheless, the superior court set a "probable validity" hearing on the Application. *See* A.R.S. § 12-2410. The day before the hearing, West Town filed a verification (the "Verification") stating:

> 1. I, Mick Crawford, am the representative of [West Town].
>
> 2. I have read the Application for Provisional Remedies (with notice) filed May 24th, 2024, and I verify that the matters and things stated therein are true to the best of my knowledge.
>
> 3. I declare under penalty of perjury that the information contained in the Application for Provisional Remed[ies] is true and correct.

3

**¶11** After the hearing, the superior court issued its ruling, finding that West Town had "satisfied the statutory requirements for issuance" of writs of attachment and garnishment and that West Town had established the probable validity of its claim as required by A.R.S. § 12-2410(C). The court therefore held that "West Town is entitled to the provisional remedies of attachment and non-earnings garnishment" upon posting a bond equal to "the payoff amount on the PureKana loan," or $10,649,395.61. The court granted West Town leave to "submit applications for pre-judgment writs of attachment and garnishment" to the clerk of the court, and authorized the clerk to issue the writs "if satisfied that West Town's applications comply with applicable law." The court further granted West Town leave to conduct discovery of Petitioners' assets "to aid in the execution of a potential judgment." Petitioners seek relief from the ruling by special action.

## DISCUSSION

**¶12** The decision to accept special action jurisdiction is "highly discretionary," *Prosise v. Kottke*, 249 Ariz. 75, 77, ¶ 10 (App. 2020) (citation omitted), but may be appropriate where no "equally plain, speedy, and adequate . . . remedy by appeal" exists, Ariz. R.P. Spec. Act. 2(b)(2).[1] Further, because the interpretation of statutes and court rules is a matter of law reviewed de novo, cases presenting such issues are "particularly appropriate for review by special action." *Sierra Tucson, Inc. v. Lee ex rel. County of Pima*, 230 Ariz. 255, 257, ¶ 7 (App. 2012).

**¶13** West Town argues that the prejudgment attachment and garnishment writs here pose no risk of "permanent or irreparable harm" to Petitioners because the writs merely allow their assets "to be held" but "not disposed of, until [entry of] final judgment."

**¶14** But the "freezing" of Petitioners' assets, even though temporary, is no trifling interference with their property rights. *See Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) (noting that, although prejudgment attachment does not result in "a complete, physical, or permanent deprivation" of property, "even the temporary or partial

---

[1] The Arizona Supreme Court revised the Arizona Rules of Procedure for Special Actions, effective January 1, 2025. These new rules apply in all special actions pending on that date, including this one, unless doing so would be infeasible or cause injustice. *See* Ariz. R.P. Spec. Act. 1 Application Note. As applying the new rules in this case would not be infeasible or cause injustice, we apply them here.

impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection"); *see also Fuentes v. Shevin*, 407 U.S. 67, 84-85 (1972) (stating that although "[a] deprivation of a person's possessions under a prejudgment writ of replevin . . . may be only temporary[,] . . . a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment" (citation omitted)). On the contrary, the wrongful deprivation of a person's property, even if only for a short while, violates due process. *Cf. Fuentes*, 407 U.S. at 86 ("The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property."); *Grimm v. City of Portland*, 125 F.4th 920, 926 (9th Cir. 2025) (holding that due process notice requirements apply to municipal vehicle towing procedures because a motor vehicle owner or operator "undoubtedly . . . has an interest against being even temporarily deprived of [the] vehicle").

¶15 West Town further asserts that a post-judgment appeal is an adequate remedy here because the bond it posted "provides Petitioners with security" to redress any harm they may suffer if the prejudgment writs are later determined to have been granted in error.

¶16 The statutory requirement that the plaintiff post a bond, though an important procedural safeguard, does not assure the property owner of full recompense for losses caused by a wrongful grant of a provisional remedy. *Cf. Fuentes*, 407 U.S. at 81-82 (noting that, although "[d]amages may . . . be awarded to" the owner "for the wrongful deprivation" of property, "no damage award can undo the fact" that the wrongful deprivation "has already occurred"; "This Court has not embraced the general proposition that a wrong may be done if it can be undone." (cleaned up)). The wrongful attachment of a defendant's assets could, among other things, "cloud[] title" to the property and "taint[]" the defendant's "credit rating," *see Doehr*, 501 U.S. at 11, while a wrongful garnishment could prevent the defendant from timely paying other debts as they come due, *see Am. Sur. Co. of N.Y. v. Nash,* 95 Ariz. 271, 275 (1964) (noting that "[p]roof that the [defendant debtor] . . . could no longer pay [its] debt" due to a "wrongful garnishment" would entitle debtor to "recover[] on the bond" posted by plaintiff (citation omitted)). Establishing and quantifying such losses may be difficult, thus rendering a bond an imperfect safeguard against loss. For these reasons, and because this case raises questions of the proper interpretation of statutes and court rules, which are legal questions "appropriate for review by special action," *see Sierra Tucson, Inc.*, 230 Ariz. at 257, ¶ 7, we accept special action jurisdiction, *see Bancamerica Commercial Corp. v. Brown*, 167 Ariz. 308, 309 (App. 1990)

(accepting special action jurisdiction to review order quashing writ of attachment because plaintiff was "without an adequate remedy by means of an appeal"); *see also In re Argyll Equities, LLC*, 227 S.W.3d 268, 273 (Tex. App. 2007) (holding that defendant had no adequate remedy by appeal to challenge erroneous writ of attachment that would "freeze assets needed to meet [defendant's] present operating costs and . . . hinder its ability to conduct business").

I.  **West Town's Claim Against PureKana's Assets in its Bankruptcy Proceeding Does Not Preclude West Town from Simultaneously Seeking Relief, Including Provisional Remedies, from Petitioners.**

¶17        Petitioners complain that West Town is not entitled to seek provisional remedies here because it "filed a proof of claim" in PureKana's bankruptcy proceeding "asserting a claim . . . for $10,205,256.56, secured by PureKana's business assets." According to Petitioners, West Town "should not be permitted to tie up [their] assets while it simultaneously takes active steps to collect the same amount in a separate proceeding."

¶18        We are aware of no authority for the proposition that a creditor's claim in a debtor's bankruptcy proceeding precludes it from simultaneously seeking repayment from the guarantors of the debt. *Cf. In re Chugach Forest Prods., Inc.*, 23 F. 3d 241, 246 (9th Cir. 1994) (noting that 11 U.S.C. § 362(a)'s provision for an automatic stay of proceedings against debtor in bankruptcy "does not stay actions against guarantors . . . or other non-debtor parties liable on the debts of the debtor" (cleaned up)). Certainly, nothing in Arizona statute makes provisional remedies unavailable to creditors who simultaneously pursue recovery from debtors in bankruptcy proceedings and from guarantors in separate litigation. Because the Arizona Legislature did not restrict the availability of provisional remedies in this manner, it is not up to this Court to read such a limitation into the provisional remedies statutes. *See Dep't of Child Safety v. Lang in and for County of Maricopa*, 254 Ariz. 539, 542-43, ¶ 11 (App. 2023) (noting that courts "lack the authority to add statutory requirements not included by the Legislature").

¶19        Of course, a creditor cannot recover twice on the same debt, and West Town does not suggest otherwise. On the contrary, West Town acknowledges that "[a]ny amount secured through the bankruptcy proceedings will . . . offset amounts recoverable . . . in this matter." As far as the record before us shows, however, West Town has not, at least to date, recovered anything in the bankruptcy case. In any event, the proof of claim West Town filed in PureKana's bankruptcy case does not, by itself, prohibit

West Town from seeking relief, including provisional remedies, against Petitioners.

**A.** **Although an Application for Provisional Remedies Must Be Supported by Affidavit, the Two Need Not Be Filed Simultaneously, and so West Town's Failure to File an Affidavit Along With Its Application Did Not, By Itself, Require that the Application Be Denied.**

¶20    Petitioners complain that "the Application was not verified or made under oath" at the time it was filed. They acknowledge that West Town served a verification later, but assert that the verification was untimely because it was not filed "until several months" after the Application was filed, only "days before the [probable validity] hearing." Because West Town "did not even bother to attempt to verify the Application until four (4) months after it was filed," Petitioners contend, "the trial court should have denied the Application."

¶21    As West Town correctly argues in response, however, its failure to submit an affidavit or verification with its Application, though a "procedural misstep," was not, by itself, fatal. Although an application for provisional remedies must be made "under oath," A.R.S. § 12-2404(A), nothing in statute requires that the application and affidavit be filed contemporaneously. A trial court cannot, of course, properly grant an application for a provisional remedy that is not supported by affidavit, and may properly refuse to schedule a probable validity hearing on an unverified application until the applicant cures the defect by supplying the required affidavit. But the fact that an application for a provisional remedy is not accompanied by an affidavit at the time it is filed does not, by itself, require that the application be denied.[2]

---

[2] The Arizona Rules of Civil Procedure (the "Rules") provide that when "*these rules require*" that a matter be supported by affidavit, an unsworn declaration may be used instead of an affidavit as long as the declaration meets certain requirements. Ariz. R. Civ. P. 80(c) (emphasis added). The requirement that an application for attachment be supported by affidavit is, however, one of statute, not a requirement of the Rules. *See* A.R.S. § 12-1522. Because Petitioners have not argued that West Town's reliance on a declaration instead of an affidavit does not satisfy A.R.S. § 12-1522, we need not consider that issue. Instead, we assume, without deciding, that the Verification is not invalid on the grounds that it is an unsworn declaration rather than an affidavit.

**B.      West Town Failed to Satisfy Statutory Requirements to Obtain a Writ of Attachment.**

¶22      Petitioners assert that the Application "failed to strictly adhere to the requirements for obtaining" a writ of attachment and therefore should have been denied. West Town argues that the court properly granted its request for a writ of attachment because the remedy is available "for the payment of money which is not fully secured" and the testimony presented at the probable validity hearing established that the debt claimed in this case is "unsecured."

¶23      A.R.S. § 12-2403 provides that a request for a provisional remedy with notice may not be granted unless:

> 1. All statutory requirements for the issuance of such provisional remedy have been complied with by the party seeking such remedy.
>
> 2. An application and notice for issuance of any provisional remedy has been filed with the clerk of the court and a copy of such notice and application have been served on the party against whom any remedy will operate.
>
> 3. The party against whom any provisional remedy is sought has been afforded an opportunity for a hearing or a hearing has been held as provided in this article.

A.R.S. § 12-2403.

¶24      The requirements to obtain the provisional remedy of attachment are set forth in A.R.S. §§ 12-1521 to -1539 and -2401 to -2412. Because these statutory requirements are intended to safeguard defendants' due process rights, courts require strict adherence with the statutes' terms. *Valley Nat'l Bank of Ariz. v. Educ. Credit Bureau, Inc.*, 23 Ariz. App. 148, 149-50 (1975) (citing case law for the proposition that "pre-judgment summary remedies provided by statute [must] be strictly followed" to "protect the owner . . . of property from undue hardship and deprivation of its full use and enjoyment prior to a final adjudication of the creditor's right, if any, to the property").

¶25      Section 12-1521 permits prejudgment attachment of property

> [i]n an action upon a contract, express or implied, for payment of money which is not fully secured by real or personal

property, or, if originally so secured, the value of such security has, without any act of the plaintiff or the person to whom the security was given, substantially diminished below the balance owed.

A.R.S. § 12-1521(1). Section 12-1522 requires that a writ of attachment be supported by an affidavit that "show[s] any one or more of the requirements for a writ of attachment as set forth in section 12-1521."

¶26         Petitioners argue that the Verification that West Town submitted "failed to provide sufficient foundation" to establish the legal and factual basis for the Application. Among other things, Petitioners contend, the Verification "did not lay sufficient foundation from an individual with personal knowledge that the debt [claimed by West Town] is unsecured."

¶27         We agree. Section 12-1522 requires that an affidavit in support of an application for a writ of attachment make a "showing" of statutory grounds for issuance of the writ. Because conclusory affidavits are without evidentiary value, the factual showing required by § 12-1522 cannot be made by an affidavit consisting of conclusory assertions by an affiant who fails to establish personal knowledge of the matters set forth therein. *See* Ariz. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *cf. Florez v. Sargeant*, 185 Ariz. 521, 526 (1996) ("[A]ffidavits that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment." (citation omitted)); *State v. Krum*, 183 Ariz. 288, 290, 294 (1995) (affirming trial court's denial of relief to criminal defendant who sought post-conviction relief based on affidavits of third parties asserting that "the victim recanted her allegations"; "[T]he trial court could properly discount the affidavits" because they "do not say when or where or to whom the victim supposedly recanted," and thus "lack any reliable factual foundation.").

¶28         Here, the Verification contains nothing more than conclusory statements to the effect that the declarant believes that the allegations in the Application are true "to the best of [his] knowledge." The Verification includes no information that would support a finding that the declarant has personal knowledge of the matters set forth in the Application. Nothing in the Verification provides any indication of the declarant's position with West Town or his role in this case, nor does anything in the Verification give cause to believe that the declarant has any knowledge of Petitioners' financial condition or of the debt they purportedly owe. The vague and

conclusory statements in the Verification wholly lack evidentiary value, and so fail to "show" any of the requirements for attachment.

¶29        Because, as Petitioners correctly argue, West Town's Application "fail[ed] to meet basic statutory requirements necessary to secure the [requested] prejudgment remedies," the Application was defective on its face and could not properly have been granted.

¶30        West Town insists that the superior court did not abuse its discretion in granting its request for a writ of attachment because the court held a probable validity hearing at which Petitioners had the opportunity to cross-examine West Town's witnesses and present evidence of their own, had they chosen to do so. Any information lacking from the Application and the supporting Verification, West Town suggests, was cured by the evidence presented at the probable validity hearing.

¶31        Under § 12-2403, a provisional remedy with notice cannot be granted unless the requirements of *all three* statutory subsections are met. Subsection 1 requires that the applicant comply with "[a]ll statutory requirements for the issuance of such provisional remedy," while Subsection 3 requires that "a hearing," or at least "an opportunity for a hearing," be afforded to "[t]he party against whom [the] provisional remedy is sought." Although the requirements of Subsection 3 were satisfied when the court held the probable validity hearing, the requirements of Subsection 1 have never been met because, for the reasons set forth above, *see supra* ¶¶ 27-29, West Town's Application did not satisfy the statutory requirements for issuance of a writ of attachment. Because the requirements of Subsection 1 of § 12-2403 were not met, the trial court erred in granting the Application. *See Benson v. Casa De Capri Enterprises, LLC,* 252 Ariz. 303, 306, ¶ 13 (2022) ("Since garnishment is a creature of statute, garnishment proceedings are necessarily governed by the terms of those statutes and courts may not allow garnishment proceedings to follow any course other than that charted by the legislature." (cleaned up)); *see also Parsons v. Ariz. Dep't of Health Services*, 242 Ariz. 320, 323, ¶ 11 (App. 2017) ("When [a] statute's language is clear and unambiguous, we must give effect to that language without employing other rules of statutory construction." (citation omitted)).

### C.        West Town Failed to Satisfy Statutory Requirements to Obtain a Writ of Garnishment.

¶32        The requirements for the provisional remedy of garnishment are set forth in A.R.S. §§ 12-1570 to -1597 and -2401 to -2412. Again, strict

compliance is required. *See Benson*, 252 Ariz. at 307, ¶ 17 ("Courts narrowly construe the garnishment statutes and apply them as prescribed by the legislature.").

¶33 A.R.S. § 12-1572 authorizes issuance of a writ of garnishment upon an application that "contain[s]," as is relevant here, "[a] statement that the applicant has good reason to believe . . . [t]hat the garnishee has in the garnishee's possession nonexempt personal property belonging to the judgment debtor." Here, neither the Complaint, the Application, nor the Verification satisfy this provision. None of these documents contains a statement that West Town has good reason to believe that any garnishee holds non-exempt property belonging to Petitioners. Indeed, none of these documents even identifies a garnishee.

¶34 West Town argues that the court did not "issue a writ of garnishment," but merely "grant[ed] [its] Application for the provisional remedies, including garnishment, subject to" its later submission of "proposed forms of writs of garnishment naming specific garnishees as required" by statute. West Town asserts, in other words, that after the probable validity hearing, the court entered what amounts to the provisional grant of the provisional remedy of garnishment, subject to West Town's subsequent submission of proposed writs of garnishment that meet statutory requirements.

¶35 The purpose of a probable validity hearing is, in part, to afford the defendant an opportunity to assert "claims of personal property exemptions" relating to the property against which the provisional remedy will operate. A.R.S. § 12-2410(C)(1). Unless the property against which the remedy will operate has been identified, however, a defendant cannot determine what exemptions from garnishment, if any, may apply. Because, when the probable validity hearing was held, West Town had never identified any account that it claimed was subject to garnishment, Petitioners were denied an opportunity to present evidence in support of potentially applicable exemptions.

¶36 Because West Town failed to comply with statutory requirements for either attachment or garnishment, the court erred in granting the Application.

## II.    Prejudgment Discovery

¶37 Finally, Petitioners assert that the trial court erred in authorizing West Town to conduct prejudgment discovery of their assets. Because this issue is likely to recur in further superior court proceedings in

this case, we address it. *See Gila River Indian Community v. Dep't of Child Safety*, 238 Ariz. 531, 536, ¶ 19 (App. 2015).

**¶38**    In authorizing West Town to conduct prejudgment discovery of Petitioners' assets, the court concluded that, "read together," Rules 64 and 69 "allow pre-judgment discovery of assets to aid in the execution of a potential judgment when the provisional remedies of attachment and garnishment are granted." Petitioners argue that neither Rule 64 nor Rule 69 authorize "pre-judgment discovery concerning a defendant's assets to aid in the request for a provisional remedy." In response, West Town asserts that the court acted within its discretion in so ordering, contending that the identification of assets through its requested discovery "advances the purpose of the provisional remedy."

**¶39**    Rule 64 provides as follows:

> (a)  Remedies--Generally. At the commencement of and throughout an action, every remedy authorized by law is available for the seizure of a person or property to secure satisfaction of a potential judgment.

> (b) Specific Kinds of Remedies. The remedies available under this rule include the following--however designated and regardless of whether the remedy is ancillary to the action or requires an independent action:

> (1) arrest;

> (2) attachment;

> (3) garnishment;

> (4) replevin;

> (5) sequestration; and

> (6) other corresponding or equivalent remedies.

Ariz. R. Civ. P. 64. A "remedy" is a judgment, order, or other form of relief that a court or other tribunal is authorized to grant to protect or vindicate a right or redress a wrongful act. *See* Black's Law Dictionary (12th ed. 2024) (defining "remedy" as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief"). Although Rule 64 authorizes a claimant to seek "remedies" throughout the pendency of an action, Rule 64 does not authorize discovery because discovery is not a "remedy."

**¶40**　　　　　Rule 69, in turn, provides in part that "[a] party may execute on a judgment -- and *seek relief in proceedings supplementary to and in aid of judgment or execution* -- as provided in these rules, statutory remedies, and other applicable law." Ariz. R. Civ. P. 69(a) (emphasis added). Rule 69 thus contemplates the use of discovery as provided in the Arizona Rules of Civil Procedure in aid of execution on a judgment. Nothing in the rule's provisions, however, authorizes the use of discovery before a judgment is obtained.

**¶41**　　　　　Prejudgment discovery is generally limited to matters "relevant to any party's claim or defense." Ariz. R. Civ. P. 26(b)(1). As courts have long recognized, restricting discovery of a defendant's assets until judgment is obtained serves to protect the defendant from being subjected to harassment, invasion of privacy, and unnecessary litigation costs. *See Arpaio v. Figueroa*, 229 Ariz. 444, 447, ¶ 9 (App. 2012) (explaining basis for limits on financial discovery when claim for punitive damages asserted); *see also Richards v. Superior Court*, 86 Cal. App. 3d 265, 271, 150 Cal. Rptr. 77, 80 (1978) ("Respon[ding] to discovery seeking financial information places a severe burden on the responder. [At] a minimum, there is the time and expense necessary to the compilation of a complex mass of information unrelated to the substantive claim involved in the lawsuit and relevant only to" a claim for damages "which may never be awarded.").

**¶42**　　　　　Because a defendant's financial condition is generally not relevant to any party's claim or defense, a majority of courts that have considered the issue have declined to allow discovery into a defendant's assets before the plaintiff has obtained a judgment. *See, e.g., SierraPine v. Refiner Prods. Mfg., Inc.*, 275 F.R.D. 604, 609 (E.D. Cal. 2011) ("[D]istrict courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment" because "such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence." (citations omitted)); *2245 Venetian Ct. Bldg. 4, Inc. v. Harrison*, 149 So.3d 1176, 1179 (Fla. Dist. Ct. App. 2014) ("In the prejudgment context, a party is entitled only to the opponent's financial records that pertain to the pending action. But in postjudgment discovery, the dispute in the original civil action has been resolved and therefore the matters relevant for discovery are those that will enable the judgment creditor to collect the debt." (cleaned up)); *Travelers Ins. Co. v. Hindle*, 748 A.2d 256, 259 (R.I. 2000) ("Ordinarily, the federal discovery rules and similar state rules do not permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment, since such matters are not relevant to the trial

issues and cannot lead to the discovery of admissible evidence." (cleaned up)).

¶43　　To be sure, discovery concerning an adverse party's assets is generally permissible if relevant to the merits of a claim or defense asserted in the litigation. *See* Ariz. R. Civ. P. 26(b)(1). Prejudgment financial discovery is permissible, for example, if the plaintiff asserts a claim for punitive damages, as long as the plaintiff makes the requisite *prima facie* showing of the defendant's liability for punitive damages. *See Larriva v. Montiel*, 143 Ariz. 23, 26 (App. 1984). Likewise, prejudgment discovery of a defendant's finances may be warranted if the plaintiff's claim is predicated on an "alter ego" theory of liability. *See Deutsche Credit Corp. v. Case Power & Equip. Co.*, 179 Ariz. 155, 160 (App. 1994) (citations omitted) (noting that "commingling of . . . funds" and parent company's "payment of salaries and other expenses of [the] subsidiary" are relevant to establish alter ego relationship); *see also In re Marriage of Gromicko*, 387 P.3d 58, 63, ¶ 35 (Colo. 2017) (holding that wife in marital dissolution action was entitled to "such discovery as would reasonably have been necessary to allow her to attempt to establish" an alter ego relationship between husband and his business). Further, discovery of the defendant's financial affairs may be appropriate when the wrongful exercise of dominion and control over assets is an element of a claim being asserted. *See, e.g.*, *Hett v. Barron-Lunde*, 290 So. 3d 565, 568, 571 (Fla. Dist. Ct. App. 2020) (rejecting challenge to order requiring defendant to produce personal financial information and holding that such evidence was relevant to plaintiff's claims for "civil theft, conversion, breach of fiduciary duty, [and] unjust enrichment" based on defendant's removal of funds from cognitively impaired man's bank accounts). And a defendant may be entitled to discovery of the plaintiff's financial information when relevant to the plaintiff's claim for compensatory damages, such as when the plaintiff seeks damages for lost profits. *See Uni-Splendor Corp. v. Remington Designs, LLC*, 2017 WL 10581102 at *2 (C.D. Cal. Sept. 5, 2017) ("In cases alleging damages based on lost sales or offset, courts have required production of corporate financial information such as tax returns; general ledgers, sales registers, and income statements; annual financial statements; and financial analyses, projections and budgets." (citations omitted)).

¶44　　Additionally, a court may properly authorize prejudgment discovery of a party's finances if evidence suggests that the party is concealing or disposing of assets to render uncollectible any judgment that may be entered. *See, e.g.*, *EEOC v. Ian Schrager Hotels, Inc.*, No. CV99-0987GAFRCX, 2000 WL 307470, at *4 (C.D. Cal. Mar. 8, 2000) (unpublished) (rejecting defendants' objection to plaintiff's discovery requests for

financial documents; "Clearly, plaintiff may obtain defendants' financial information . . . to determine whether defendants have attempted to transfer, or have transferred, income or assets to others to avoid potential liability if defendants lose the pending litigation."). Prejudgment remedies are statutorily authorized to prevent the dissipation of assets during the pendency of litigation to frustrate post-judgment recovery, *see* A.R.S. §§ 12-1521(2), -2402(1), and nothing in this opinion precludes trial courts from authorizing creditors to conduct financial discovery when necessary to give effect to those statutory remedies.

¶45 But the mere fact that a party has been granted a provisional remedy does not, without more, entitle the party to conduct discovery into its adversary's assets or financial condition. Unless the defendant's finances are relevant to a claim or defense, the general rule barring prejudgment discovery of a defendant's finances governs when prejudgment remedies are sought to secure an unsecured or under-secured debt. Accordingly, we hold that, because West Town's claim for provisional remedies was based solely on its contention that Petitioners are liable for an unsecured debt, the court erred in granting West Town's request to conduct prejudgment discovery of Petitioners' financial condition.

## III. Attorney Fees and Costs on Appeal.

¶46 Both parties claim an award of attorney fees and costs pursuant to A.R.S. §§ 12-341.01(A) and -2411. In our discretion, we deny without prejudice each party's request for an award of fees, deferring to the superior court to determine whether to award fees incurred in this special action to the successful party at the conclusion of the proceedings on the merits. *See L.H. v. VandenBerg*, 256 Ariz. 44, 50, ¶ 22 (App. 2023) (denying petitioners' request for award of attorney fees without prejudice and authorizing the superior court to award "fees incurred in this special action" after resolving pending motion "on the merits"); *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 204, ¶ 37 (App. 2007) (denying appellant's request for award of attorney fees on appeal, "deferring this request to the trial court's discretion pending resolution of the matter on the merits"). We award Petitioners their costs under Ariz. R. Spec. Act. P. 17(c), subject to their compliance with the requirements of that rule.

## CONCLUSION

**¶47** For the foregoing reasons, we accept special action jurisdiction and grant relief by vacating the orders granting provisional remedies and prejudgment discovery.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**: JR